MARION DUCKETT, CHARLES H. STANLEY AND DAVID S. BRISCOE, TRUSTEES, vs. THE NATIONAL MECHANICS' BANK ET AL.

*Banks—Trusts—Deposit to Personal Account of Money Payable to the Depositor as Trustee—Breach of Trust—Liability of Bank for Participation in Such Breach—Notice—Memoranda on Checks—Limitations in Equity.*

When money is deposited in a bank and the bank's officers are unaware that the fund does not belong to the person making the deposit, the bank will be free from liability upon paying out the fund upon the depositor's checks, although it should afterwards turn out that the fund in reality belonged to some one else.

If money be deposited by one as trustee, the depositor as trustee has the right to withdraw it, and the bank, in the absence of knowledge or notice to the contrary, may assume that the trustee will appropriate the money to a proper use, and would not be liable for a misappropriation by him.

But if a bank is explicitly directed to put a certain sum to the credit of a party as trustee and yet places the sum to the personal account of that party, who commits a breach of trust by misappropriating it, then the bank is liable to the trust estate for such participation in the breach of trust, after notice.

Memoranda or figures placed on a check for the convenience of the drawer are not notice to the bank that the check is to be paid from a particular fund, or is to be credited to a particular account.

All persons who knowingly aid a trustee in committing a breach of trust are equally liable with him for the consequences of such breach.

A party liable as a participant in a breach of trust cannot rely upon the Statute of Limitations as a defence.

Limitations cannot be relied on in equity unless the defence of the statute be set up by plea or answer.

A sum of money due to a trustee and belonging to the *corpus* of the trust estate was paid to him by a check as follows: "Pay to the order of J. S., cashier, $2,024, to deposit to the credit of H. W. C., trustee." J. S. was the cashier of the defendant bank in which the trustee C. kept a personal account only. The proceeds of the check were placed by the bank to C.'s individual account and the money was misapplied by him. The bank had no notice that the fund belonged to the trust estate, other than that derived from the

check itself. C. was removed from the trusteeship because a defaulter to the estate, and plaintiffs, appointed trustees in his place, brought suit against the bank to recover the amount of said check. *Held,*

1st. That the bank participated in C.'s breach of trust by placing the proceeds of the check to his personal account instead of to his account as trustee, according to the plain direction of the check, and was liable to make good to the trust estate the amount misappropriated by C.

2nd. That it was no defence that if the bank had opened an account with C. as trustee and credited that account with these funds, still he could have withdrawn them on checks signed as trustee and then misapplied the money without involving the bank in any liability, because that is what might have been done and not what was actually done.

3rd. That no subsequent ratification of the wrongful act of the bank by the trustee C. can bind the beneficiaries of the trust estate.

The same trustee received another sum of money belonging to the same trust estate by a check reading as follows : " Pay to the order of J. S., cashier, $2,000 for deposit to the credit of H. W. C., being the balance of purchase money due him as trustee from J. R. C." This was also placed to C.'s personal account in defendant bank, and the proceeds were misapplied by him. *Held,* that the bank was not liable as a participant in this breach of trust, because there was no direction in the check to place the proceeds to the account of C. as trustee, but the amount was made payable to him personally, and the memorandum on the check as to the origin of the fund was placed there for the convenience of the drawer.

Appeal from a decree of the Circuit Court of Baltimore City (DENNIS, J.), dismissing the bill of complaint.

The cause was argued before McSHERRY, C. J., BRYAN, FOWLER, PAGE, ROBERTS and BOYD, JJ.

*Marion Duckett* and *Charles H. Stanley* (with whom was *David S. Briscoe* on the brief ), for the appellants.

*James M. Ambler* and *Randolph Barton, Jr.* (with whom were *Barton & Wilmer* on the brief), for the appellee.

McSHERRY, C. J., delivered the opinion of the Court.

These proceedings had their origin in a bill filed by the appellants against the appellees in the Circuit Court of Bal-

timore City.   The appellants are trustees who were appointed by an order of the Circuit Court for Prince George's County in the place and stead of Henry W. Clagett, the survivor of three trustees named in the will of John D. Bowling.   To these latter—the testamentary trustees—certain funds were bequeathed by Mr. Bowling, to be held in trust for the purposes designated in the will; but as those purposes have no relation whatever to the questions presented in the record they need not be alluded to here.   It is only necessary to state that the funds now in controversy formed part of the *corpus* of that trust estate.   Upon the death of his associates Clagett became, under a decree of the Circuit Court for Prince George's County, sole trustee and thereafter, having made default to the trust estate, was in due course removed and the appellants were immediately appointed to discharge the trusts created by the will of Mr. Bowling.   Amongst the investments belonging to the trust estate in the hands of Clagett were two mortgages, each for two thousand dollars, one due by Thomas S. Duckett and the other by Washington J. Beall.   The mortgage given by Beall was foreclosed by Clagett after he became sole trustee, and the money realized from the sale was paid to him through Mr. Charles H. Stanley.   The payment was made by Mr. Stanley's check, which reads as follows : " Laurel, Md., February 13, 1892.   Citizens' National Bank.   Pay to the order of James Scott, cashier, $2,000.00, two thousand dollars, for deposit to credit of Henry W. Clagett, being the balance of purchase money due him as trustee from John R. Coale.   C. H. Stanley." When the Duckett mortgage matured the amount secured by it was paid to Clagett through Mr. Stanley by a check in these words : " State of Maryland, Citizens' National Bank of Laurel, Laurel, Maryland, Sept. 17, 1892.   Pay to the order of James Scott, cashier, $2,024.30, two thousand and twenty-four 30—100 dollars, to deposit to the credit of Henry W. Clagett, trustee.   C. H. Stanley." Both of these checks were deposited in the National Mechanics' Bank of Baltimore, where Clagett

kept an individual or personal account and the proceeds of
each were carried to his credit in that account.    Clagett in
his capacity as trustee had no account with the bank.    The
individual account of Clagett, including the proceeds of the
two checks just transcribed, was drawn on from time to time
by him, and after his removal as trustee it was discovered that
these funds had been dissipated and spent.    Clagett was
and still is insolvent.    The new trustees—the present appel-
lants—made demand upon the National Mechanics' Bank
for a restitution of the amount of the two checks, claiming
that the bank was accountable therefor because it had
wrongfully placed the proceeds thereof to Clagett's indi-
vidual account instead of to his account as trustee and had
thereby aided and participated in his breach of trust ; and
to enforce that demand they filed the pending bill against
the bank and Clagett.    Upon final hearing the Circuit Court
of Baltimore City decreed that the bank was not liable and
dismissed the bill, whereupon this appeal was taken.

The ultimate inquiry is, whether under the circumstances
stated the bank is liable to make good to the new trustees the
amounts of these two checks.    In addition there are subor-
dinate questions arising by way of defence that will be dis-
posed of after the main one has been dealt with.

There can be no dispute that as a general principle all
persons who knowingly participate or aid in committing a
breach of trust are responsible for the money and may be
compelled to replace the fund which they have been instru-
mental in diverting.    Every violation by a trustee of a duty
which equity lays upon him, whether wilful and fraudulent
or done through negligence, or arising through mere over-
sight or forgetfulness, is a breach of trust.    2 *Pom Eq.* sec.
1079.    There is in such instances no primary or secondary
liability as respects the parties guilty of, or participating in ·
the breach of trust ; because all are equally amenable.
That a breach of trust was committed by Clagett does not
admit of a doubt.    The defaulting trustee was removed be-
cause he was a defaulter.    He unquestionably received the

proceeds of these two checks and those proceeds formed part of the *corpus* of the trust estate which it was his imperative duty to preserve intact.    Instead of performing that duty he spent the funds—they have disappeared and he has not explained what he did with them—and it can make no possible difference for what purpose he did spend them, if by spending them he impaired the *corpus* of the trust estate ; and that he did impair the *corpus* of the trust estate no one pretends to deny.    Whoever knowingly aided him, or knowingly participated with him in missapplying that fund, became by reason of so aiding and so participating, equally liable with him to make the fund good by restoring it to the trust estate.    2 *Pom. Eq.,* sec. 1079.    If the bank knowingly aided and participated in Clagett's breach of trust, then the bank is, beyond dispute, as responsible to the new trustees as is the defaulting trustee himself.    This liability of the bank depends, however, altogether upon the contingency that it knowingly aided the trustee, Clagett, to commit the default of which he was undeniably guilty.    If without knowledge of Clagett's misconduct, or if without sufficient notice to put it on inquiry that would have enabled it to ascertain that Clagett was mingling with his individual deposits and using as his own, money that the bank knew or had the means of knowing was trust money ; or if the bank was merely the innocent agency through which, without fault or negligence on its part, Clagett depleted the trust estate, then it was not guilty of aiding him in misappropriating the trust fund and is not liable to restore it.    In seeking, then, to solve the principal inquiry we must look to the record for the evidence which will fasten on the bank this knowledge or notice, if in fact it possessed such knowledge or notice.

At the outset it ought to be noted that there is a marked difference between the phraseology and the legal effect of the two checks already set forth.    The one is payable to Scott, cashier, for deposit to the credit of Clagett *personally*—that is, *not* in his capacity as trustee—though there is

a memorandum added of which we will speak in a moment. The other check is payable to Scott, cashier, " *to deposit* to the credit of Henry W. Clagett, *trustee.*" Apart from these two checks and the information which they themselves by their terms imparted, there is no pretence that the bank had any notice or knowledge that the funds collected on them belonged to or formed part of any trust estate, or were other than Clagett's own, individual property. As a consequence we are restricted to the checks alone in determining whether the bank is liable.

It is true, undoubtedly, that a bank is bound to honor the checks of its customer so long as he has funds on deposit to his credit, unless such funds are intercepted by a garnishment or other like process, or are held under the bank's right of set-off. It is equally true that whenever money is placed in bank on deposit and the bank's officers are unaware that the fund does not belong to the person depositing it, the bank upon paying the fund out on the depositor's check will be free from liability even though it should afterwards turn out that the fund in reality belonged to some one else than the individual who deposited it. It is immaterial, so far as respects the duty of the bank to the depositor, in what capacity the depositor holds or possesses the fund which he places on deposit. The obligation of the bank is simply to keep the fund safely and to return it to the proper person or to pay it to his order. If it be deposited by one as trustee, the depositor as trustee has the right to withdraw it, and the bank, in the absence of knowledge or notice to the contrary, would be bound to assume that the trustee would appropriate the money, when drawn, to a proper use. Any other rule would throw upon a bank the duty of inquiring as to the appropriation made of every fund deposited by a trustee or other like fiduciary ; and the imposition of such a duty would practically put an end to the banking business, because no bank could possibly conduct business if, without fault on its part, it were held accountable for the misconduct or malversation of its depositors who

occupy some fiduciary relation to the fund placed by them with the bank. In the absence of notice or knowledge a bank cannot question the right of its customer to withdraw funds, nor refuse (except in the instances already noted) to honor his demands by check ; and, therefore, even though the deposit be to the customer's credit in trust, the bank is under no obligation to look after the appropriation of the trust funds when withdrawn, or to protect the trust by setting up a *jus tertii* against a demand. But if the bank has notice or knowledge that a breach of trust is being committed by an improper withdrawal of funds, or if it participates in the profits or fruits of the fraud, then it will be undoubtedly liable. In support of these general principles, if support they need at all, we may refer to *Munnerlyn* v. *Augusta Sav. Bk.*, 88 Ga. 333 ; *State Nat. Bank* v. *Reilly*, 124 Ill. 464 ; *Chosen Freeholders* v. *Newark City Nat. Bk.*, 48 N. J. Eq. 51, all cited in 3 *Am. & Eng. Ency. Law* (2 ed.) 833, 834; *Walker* v. *Manhattan Bk.*, 25 Fed. Rep. 255 ; 1 *Morse on Banks and Banking*, sec. 317 ; *Swift* v. *Williams*, 68 Md. 237.

As the bank, then, would not be responsible for the use made of the trust funds by the trustee unless it knowingly participated in a breach of trust or profited by the fraud ; do the checks, which are, as we have said, the only evidence in the record on this branch of the case, show that the bank is liable ? As respects the first check representing the proceeds of the foreclosure of the Beall mortgage, we are of opinion that there is no liability on the part of the bank. It will be remembered that this particular check was not made payable to Clagett, *as trustee*, nor, being payable to Scott, cashier, were the proceeds directed to be placed to the credit of Clagett, *trustee*. In placing the proceeds to the individual credit of Clagett the bank did just precisely the thing it was directed on the face of the check to do. In doing this it violated no duty to any one, unless the addition of the words " being the balance of purchase money due him as trustee from John R. Coale," controlled the explicit di-

rection in the body of the check to deposit the fund to the credit of Clagett individually, and gave the bank notice that instead of doing what the check required should be done it must do something it was not instructed to do at all; viz., place the funds to the credit of Clagett as trustee. Mr. Stanley's check was drawn, not on the National Mechanics' Bank, but upon the Citizens' National Bank of Laurel; and the memorandum descriptive of what the funds were or the source from whence they came, was neither an instruction to the Mechanics' Bank through which the check passed as to the account in which these funds when collected from the Citizens' Bank should be credited in the Mechanics' Bank to Clagett; nor was it a notification to the Mechanics' Bank that the funds were impressed with a trust that would be invaded by their being carried to Clagett's individual credit. On the contrary, the specific instruction on the face of the check was to credit Clagett individually with the proceeds, whatever the origin or ultimate use of those proceeds might be. This memorandum imposed no duty on the Mechanics' Bank and operated only to subserve the convenience of the drawer of the check. In the case of *State Nat. Bank of Springfield* v. *Dodge*, 124 U. S. 333, it appeared that the clerk of the United States District Court for the Southern District of Illinois deposited with the State National Bank the funds belonging to the registry of the Court. Whenever a deposit was made it was accompanied by a deposit ticket giving the number of the bankruptcy case to which the fund belonged and a corresponding entry was made upon the books of the bank indicating that the particular deposit belonged to a particular case designated by its number. All this was fully understood by the officers of the bank. When checks signed by the clerk and countersigned by the Judge were drawn upon this account, the number of the case to which the fund to be paid on the check belonged, was written on the upper right-hand corner of the check following the words " Case No." Numerous deposits were made in many cases, but each and every deposit showed the

number of the case, and consequently identified the case, to which each deposit actually belonged.    Many checks were drawn upon and paid by the bank in cases in which no deposits had been made by the clerk at all and the checks themselves showed by the case numbers written on the top right-hand corners that no deposits belonging to those cases had ever been received, because there were no deposits credited to the cases bearing those numbers.    In consequence of the bank having paid various checks bearing case numbers to the credit of which cases no deposits had ever been made, the entire sum to the credit of the whole account was checked out before Dodge, to whom several checks were given in the distribution of the assets of a particular estate, received his checks and presented them to the bank for payment.    In the case in which Dodge was interested as a creditor of a bankrupt, there had been deposited, as shown by the deposit tickets and by the entry of the case number on the bank's books, more than sufficient to pay the checks held by Dodge as well as all other checks delivered to other creditors of the same bankrupt ; but because the bank had paid out the funds belonging to this case, on checks bearing the numbers of other and different cases, as to which latter cases there had been no deposits made at all, there were no funds in bank to the credit of the registry with which to pay the checks held by Dodge, and the bank refused to pay them.    Dodge brought suit against the bank and based his claim to recover on the distinct ground that the bank had actual notice from its own books as to what estates had funds on deposit, and had actual notice on the face of every check drawn in a case from which no funds had been received, that there were no funds on deposit applicable to the payment of such checks, and that, consequently, when it paid those checks it paid them knowingly out of funds belonging to other and different cases or estates, and was bound to honor the checks held by Dodge, as they were drawn against funds which had been actually deposited as part of the assets of the bankrupt estate of which he

was creditor.   But the Supreme Court held that "no bank is bound to take notice of memoranda and figures upon the margin of a check, which a depositor places there merely for his own convenience, to preserve information for his own benefit ; and in such case the memoranda and figures are not a notice to the bank that a particular check is to be paid only from a particular fund.   So, too, a mark on a deposit ticket, if intended to require a particular deposit to be kept separate from all other deposits placed to the credit of the same depositor, must be in the shape of a plain direction, if such a duty is to be imposed on the bank."   The Court likewise held that " the bank had a right to assume that these memoranda of numbers in the deposits and in the checks were merely for the convenience of the Court and its officers."   Dodge was accordingly denied a recovery.

Unless we give to the memorandum made by Mr. Stanley for his own convenience on the first check, an effect which the Supreme Court declined to give to a much more significant memorandum contained in the checks delivered to Dodge, we must hold that the Mechanics' Bank by carrying to the personal credit of Clagett the proceeds of the check representing the avails of the Beall foreclosure, did no act that made it liable to the Bowling trust estate for the misappropriation of those particular proceeds by the deposed trustee.   And this is so because the memorandum could not operate to qualify the right of Clagett to receive the funds individually and the bank did no wrong in placing them to his credit in the capacity in which he was obviously authorized to receive them.   The bank having therefore rightfully entered the proceeds of this first check to Clagett's  individual credit, he was entitled to draw them out so far as the bank was concerned, and the bank was under no obligation and had no authority to interfere with him in doing so.

Precisely for the reasons that the bank is *not* responsible for the misappropriation of the proceeds of the first check it *is* liable to the new trustees for the misapplication by Clagett of the funds collected by it on the second check.   The

second or Duckett check, in terms directed the cashier of the Mechanics' Bank "to deposit" the two thousand and twenty-four dollars and thirty cents " to the credit of Henry W. Clagett, *trustee.*" This was an explicit notification to the bank that Clagett was not the actual owner of the money. *Bundy* v. *Monticello*, 84 Ind. 119 ; 3 *Am. & Eng. Ency. Law* (2 ed.), 832.   It was an equally explicit instruction to the bank *not* to place the funds to the credit of Clagett's personal account.   It was consequently more than a mere memorandum made for the convenience of the drawer of the check.   Knowing that the money was not Clagett's but that it was payable to him and to be deposited to his credit *as trustee,* the bank had no authority to place it to his individual credit (*Am. Ex. Bk.* v. *Mining Co.,* 165 Ill. 109) ; and if loss ensued by reason of Clagett drawing the fund out by checks on his personal account, the bank is liable to make restitution to the trust estate.   The bank in the eye of the law participated in the breach of trust of which Clagett was guilty.   In fact the bank took the first step that ended in the spoliation of the trust.   Its act in placing distinctly marked trust funds to the personal credit of Clagett was obviously wrongful and it must bear the resulting consequences.   It is no answer to say that had the bank obeyed the direction given to it, and had it opened an account in the name of Clagett as trustee and credited that account with these funds, still Clagett could have withdrawn them on checks appropriately signed and could then have misapplied the money without involving the bank in any liability. This is no answer, simply because what *might* have been done was *not* done.   Had the bank opened the account for this fund in the name of Clagett, trustee, instead of entering the credit to his personal account it would have done what it was its plain duty to do, and it would *not* have been guilty of the error which it did commit.   Had it done its duty, and had Clagett afterwards withdrawn the money, as he might have done, and had he then misapplied it without the co-operation of the bank, there would have been no liability

incurred by the bank at all. But this was not done, and the failure of the bank to do what it ought to have done cannot be treated as tantamount to the thing that it did do unless contraries are equivalents of each other. What it *ought* to have done is not what it *did do*, and it cannot escape liability upon the mere conjecture that what *did* happen to the funds *might* have also happened had the bank not been derelict in its dealings with those funds.

It has, however, been insisted that Clagett knowing that the bank had wrongfully placed trust funds to his individual credit, ratified that wrongful act by his subsequent conduct, and as his ratification was equivalent to a prior direction to do what was done, the bank is not answerable. Both Clagett and the bank participated in the wrong with respect to the proceeds of the Duckett mortgage. Because they both did wrong, they are both accountable for it. But the contention is, if one of two wrongdoers who reaps the fruits of the joint wrongful act, ratifies what his accomplice has done, that accomplice is thereby released and exculpated. This, of course, is not the bald form in which the rather ingenious argument advanced to support the contention is presented, but reduced to its last analysis it comes to that startling proposition. The wrong was done, not to the *trustee*, but to the *trust estate*. As between the bank and the trustee *his* ratification of *its* act might bind *him*, but upon what principle can such a ratification bind the beneficiaries of the trust, who have been injured by the joint breach of trust on the part of the bank and the trustee? No ratification by the trustee of the bank's participation in the breach of trust can possibly affect in any way the bank's accountability to the new trustees.

As to the Statute of Limitations it is only necessary to say that a participant in a breach of trust cannot, any more than can the trustee himself, invoke that defence. 2 *Pom. Eq.* sec. 1080. Even if the statute applied, to be availed of as a defence it must be invoked by either a plea or an answer. *Allender* v. *Vestry Trinity Ch.*, 3 Gill, 166. The

answer of the bank relies on limitations only as against the claim for two thousand dollars, which is *not* the claim for the two thousand and twenty-four dollars and thirty cents collected on the check given in payment of the Duckett mortgage debt—and *that* is the claim for which we hold the bank liable.    So in fact the statute is pleaded against the claim that the bank is not liable for and is not pleaded against the claim for which it is responsible.

We have made no allusion to a line of cases of which *Third Nat. Bk.* v. *Lange*, 51 Md. 138 ; *Marbury* v. *Ehlen*, 72 Md. 206 ; and *Stewart* v. *Fire Ins. Co.*, 53 Md. 564, are illustrations ; because the principles applied in that group of decisions have no relation to the questions involved on the record now before us.    The sale of a promissory note payable to a trustee—and therefore a non-negotiable note—or the transfer of a certificate of stock standing in the name of an individual as trustee, is quite a different thing from the payment of a check drawn by a trustee on an account standing to his credit as trustee in a bank.    Where certificates of stock are held in trust and on their face indicate that they are so held, the bank or other corporation is bound before suffering them to be transferred on the books of the corporation, to know, or at least to use proper diligence to ascertain, that the trustee has authority to make the transfer ; whereas in the case of a deposit the relation of debtor and creditor is created in the capacity in which the deposit is made, and the bank's duty is to pay out the fund to or upon the order of the person making the deposit when the check is properly signed, without looking to the application of the fund ; and it incurs no responsibility by so doing unless it knowingly participates in a breach of trust or itself reaps the fruit thereof.

We hold, then, on the entire case, that the bank is accountable for the sum of two thousand and twenty-four dollars and thirty cents—the amount of the check dated September 17th, 1892—with interest thereon from the date of the deposit of the proceeds to the credit of Clagett's individual

account; and that it is not liable for the proceeds of the other check.

The decree dismissing the bill of complaint will accordingly be reversed, and the cause will be remanded that a new decree may be passed conforming to this opinion.

*Decree reversed with costs above and
below and cause remanded.*

(Decided December 1st, 1897).