## NEW AMSTERDAM CASUALTY CO. v. FIRST NAT. BANK OF OKLAHOMA CITY et al.

No. 19796.   Opinion Filed Dec. 1, 1931.

Rehearing Denied Jan. 12, 1932.

Nowlin, Spielman & Thomas, for plaintiff in error.

Wm. G. Davisson and W. B. Johnson, for defendants in error.

McNEILL, J. This is an appeal from the judgment of the district court of Carter county in favor of the Exchange National Bank of Ardmore, Okla., and against the plaintiff. The parties will be referred to as they appeared in the trial court. The action was commenced by the plaintiff in the district court of Carter county on April 9, 1927. The cause was tried on plaintiff's third amended petition. It is an action based on tort growing out of the conversion, misappropriation, and embezzlement of funds of Carter county, by its former treasurer, S. F. Haynie, during his term of office.

The petition alleges that the said Haynie created a secret deposit in the First National Bank in Oklahoma City, Okla., which was not a designated depository bank for funds of Carter county; that said Haynie thereafter caused said bank to issue to him, as county treasurer of said county, its two cashier's checks for all of such sum so deposited in said First National Bank, one check being in the sum of $75,000 and the other in the sum of $6,461.05; that said Haynie presented to the teller of the Exchange National Bank said check of $75,000 and purchased in lieu thereof a cashier's check of the Exchange National Bank for $75,000, payable to one E. G. Lewis, an oil promoter, residing in the state of California.

Said plaintiff was surety on the official bond of said county treasurer and seeks to

recover from said defendant banks on the theory that said defendant banks did unlawfully and negligently aid, participate, and assist said county treasurer in the unlawful diversion of said funds, and charges that the conduct of said defendant banks and each of them was the proximate cause of said loss to Carter county. Said plaintiff attempts to charge that the defendant Exchange Bank of Ardmore, being a designated depository of Carter county, when it received said cashier's check for $75,000 and the proceeds thereof, owed to Carter county the lawful duty of accepting the same as a deposit to the credit of Carter county and the duty of refusing to pay out said funds except upon a check, draft, or lawful order showing upon its face the purpose for which it was drawn; that said bank did assume and owe to said county the duty of exercising the highest and utmost care, caution, and diligence to prevent the wrongful, unauthorized and fraudulent withdrawal of said funds of Carter county by any person; that said bank by its negligence and its unlawful acts in violation of its legal duties to Carter county aided said Haynie in unlawfully changing the form of the funds of said Carter county from evidence of debt having identification as county funds to a negotiable instrument having no identification as county funds, and that except for the negligent conduct of said bank said misapplication of said funds would not and could not have been consummated.

The plaintiff prayed judgment against defendants and each of them in the sum of $75,000. The Exchange National Bank filed a separate answer by way of general denial, and specifically denies that it entered into any conspiracy with S. F. Haynie or the First National Bank to defraud or misapply the funds of Carter county, and further states, if said First National Bank was not the designated depository at the time said cashier's check was issued, that defendant had no knowledge thereof; that defendant relied on the honesty of the representations made by Haynie and delivered to him its cashier's checks in lieu of the cashier's check of the First National Bank, which checks it subsequently paid in due course.

On May 21, 1928, said cause came on for trial. A jury was waived and the case was tried upon an agreed stipulation of facts, which in part, in so far as the same becomes material in this case, is substantially as follows:

That Simon F. Haynie was the county treasurer of Carter county, Okla., for a term of two years beginning July 1, 1923, and expiring July 1, 1925; that he furnished said county a fidelity bond conditioned as required by law signed by plaintiff as surety; that the First National Bank of Oklahoma City is a national bank with its principal place of business in Oklahoma City, Okla., and that the Exchange National Bank of Ardmore, Okla., is a national bank with its principal place of business at Ardmore, Okla.; that said Haynie failed to account to his successor in office for large sums of money which he had received by virtue of his office; that by reason thereof the board of county commissioners of Carter county recovered judgment against said Haynie and plaintiff herein, and that said plaintiff, being the defendant therein, paid said judgment in full in the sum of $109,000; that said Exchange National Bank of Ardmore was a duly designated depository for the funds of Carter county; that said Haynie did deposit in the First National Bank of Oklahoma City certain moneys, funds, checks, and credits of Carter county as follows:

On January 20, 1925, the sum of $7,791.02

On February 24, 1925, the sum of $43,666.76

On March 9, 1925, the sum of $39,332.28

Said moneys were deposited in an account named in the books of said bank as "S. F. Haynie, County Treasurer, account reopened," and the same were commingled with the general funds of said First National Bank, which bank was not a lawfully designated depository of Carter county; that neither plaintiff nor defendant had any knowledge that said account had been or was being carried on the books of said bank by Haynie; that on April 13, 1925, said Haynie drew, signed, and presented to said First National Bank a certain check on the form of the county treasurer's checks payable to the order of S. F. Haynie for the principal sum of $81,461.05, signed "S. F. Haynie, Treasurer;" that said check was charged against the account of said Haynie as county treasurer in the First National Bank of Oklahoma City on April 13, 1925, and said bank at the request of said Haynie issued to said Haynie its two cashier's checks, one for the principal sum of $75,000, making the same payable to the order of S. F. Haynie, county treasurer, and one for the principal sum of $6,461.05, payable to the order of S. F. Haynie, county treasurer; that on the 17th day of April, 1925, said Haynie presented the aforesaid cashier's check for $75,000 at the teller's window at the exchange National Bank at Ardmore, Okla., indorsed as follows: "Pay to Exchange National

Bank, Ardmore, Okla., or order. S. F. Haynie, County Treasurer, Carter County, Oklahoma," and in consideration of same purchased a cashier's check of the Exchange National Bank for $75,000 payable to one E. G. Lewis, representing at the time that said Lewis was the holder of certain county warrants or securities and that said Haynie wanted the cashier's check of said bank issued in payment of said warrants direct to said Lewis instead of indorsing to said Lewis said $75,000 cashier's check in order to obtain a check record by the payment direct to E. G. Lewis; that before the delivery of the cashier's check to said Haynie by the Exchange National Bank in said amount to Lewis, teller, Verna Wright, presented it to the cashier of said bank for signature; that neither said teller nor said cashier of said defendant bank had any knowledge that said Haynie was intending to misapply or intending to misappropriate the proceeds of said cashier's check other than the knowledge that was imputed or legally implied or was given to them by reason of the foregoing circumstances; that said defendant bank and its officers did not know E. G. Lewis, but relied upon said Haynie's statements and representations as to who said Lewis was and did not learn of the use to which the proceeds of said check had been put until after the auditors had checked the records of the office of said Haynie in the month of _____, 1925; that said Haynie bore a reputation of being an honest and upright citizen in the community; that said $75,000 check was mailed by Haynie to Lewis in the state of California, said Lewis being an oil speculator and promoter in the state of California, and the money was dissipated in speculation on oil property; that all of said checks were paid in due course of clearance and that when the cashier's check of the First National Bank of Oklahoma City was presented to the Exchange National Bank, said Haynie did not request said Exchange National Bank to deposit or enter said check as a deposit to the credit of Carter county, nor to himself as its treasurer upon the books of said bank, and that said bank did not enter the said cashier's check or its proceeds upon the books as a deposit to the credit of Carter county, nor to said Haynie as county treasurer of said Carter county. It was further stipulated that the defendant Exchange National Bank did not charge nor receive any exchange from said Haynie for handling said check, and that it received no other consideration than the said cashier's check of the First National Bank of Okla-

homa City for issuing its own cashier's check in lieu thereof.

It was further stipulated that plaintiff company made demand upon said Exchange National Bank for the payment to plaintiff of the sum of $75,000, as moneys due and owing plaintiff by reason of the foregoing facts; that said demand was refused and said sum has never been paid to plaintiff by said defendant.

It was further stipulated that the total shortage in the account of said Haynie during his term of office as county treasurer and while plaintiff's bonds were in force was in excess of $100,000 and was in the total sum of $145,313.36, inclusive of the items sued on in the aforesaid cause No. 15154, for which sum said Haynie failed to account to his successor in office, and that the only reimbursements recovered by Carter county were the sum of $88,792.54 and $20,207.46, amounting to $109,000 paid by the plaintiff in satisfaction of said judgment rendered in said cause No. 15154, and that the residue of said shortage is still due to Carter county and unpaid.

The court made findings of fact and conclusions of law as follows:

"There having been requested of this court by the plaintiff at the beginning of the trial that it make certain findings of fact and conclusions of law, and there having been submitted to this court by the plaintiff herein, certain specific requested findings of fact and conclusions of law, the court now takes the following action as to such requested findings and conclusions:

"1. Having been requested to find whether or not the defendant, Exchange National Bank, was negligent in accepting the cashier's check for $75,000 from the First National Bank of Oklahoma City, from S. F. Haynie, and issuing therefor the cashier's check of said Exchange National Bank payable to the order of E. G. Lewis for $75,000, as set forth in the stipulation the court finds that said Exchange National Bank was not negligent. To which finding of the court, the plaintiff excepts.

"2. On the question as to whether or not on the 17th day of April, 1925, when the above-mentioned transaction was had between Haynie and the defendant bank, the defendant bank had notice that the money so handled by the said Haynie and said bank was the money of Carter county, the court finds that the bank did have such notice.

"3. As to whether or not on April 17, 1925, when the above-mentioned transaction was had between Haynie and the defend-

ant bank, the defendant bank had sufficient notice of the irregularity of said transaction to put a reasonably prudent person upon inquiry as to the legality of same, the court finds that the bank did not have such notice. To which finding of the court, the plaintiff excepts.

"4. The court finds the issues in favor of the defendant and against the plaintiff. To which action of the court the plaintiff excepts.

"Conclusions of Law.

"1. As a conclusion of law, the court finds that the defendant, the Exchange National Bank, was not negligent in receiving from Haynie the cashier's check of the First National Bank of Oklahoma City for $75,000, and issuing therefor its cashier's check for a like sum payable to E. G. Lewis, to which conclusion of the court, the plaintiff excepts.

"2. The court finds that the defendant, the Exchange National Bank, is not liable to the plaintiff under the stipulation filed in this cause for the said sum of $75,000, or any other sum.

"3. The court finds, as a conclusion of law, that the county treasurer, Haynie, had the lawful power to purchase from the Exchange National Bank, cashier's check for $75,000, for the purpose for which the stipulation shows that he represented that he wanted the same, and that said bank had the right to assume that the county treasurer was honest and that the money would be devoted to lawful purposes. To which conclusion of the court, the plaintiff excepts.

"4. The court finds, as a conclusion of law, that the defendant, Exchange National Bank, had the power to sell to S. F. Haynie, under the circumstances set forth in the stipulation of fact, its cashier's check for $75,000, payable to E. G. Lewis, and to receive in payment therefor the cashier's check for $75,000 issued by the First National Bank of Oklahoma City, to the said S. F. Haynie, county treasurer. To which conclusion of the court, the plaintiff excepts.

"5. While in view of the conclusions heretofore reached, the court does not deem it essential to make a finding on the question of the right of the plaintiff to subrogation, the court concludes, as a matter of law, that if Carter county had had a right to recovery against the defendant in this case under the facts set forth in the stipulation, that the plaintiff herein would have been entitled to subrogation to the rights of Carter county as against the defendant, the Exchange National Bank, for its claim of $75,000, as set forth in plaintiff's petition. To which conclusion of law, the defendant excepts."

Counsel for plaintiff sets forth ten separate assignments of error, which plaintiff has condensed and discussed in their brief under the foregoing propositions:

"1. The trial court erred in rendering judgment in favor of the defendant in error and against the plaintiff in error upon the trial of said cause for the reasons that said judgment was contrary to the evidence and was not sustained by sufficient evidence and that said judgment is contrary to law.

"2. That the trial court erred in rendering its findings of fact in that said findings of fact are contrary to the evidence and not sustained by the evidence.

"3. The trial court erred in its conclusions of law in that its conclusions of law are contrary to law.

"4. The trial court erred in overruling the motion of plaintiff for a new trial."

Section 5727, C. O. S. 1921, which is the Depository Act of Oklahoma, provides in part:

"In all counties, the county treasurer shall deposit daily all of the funds and moneys of whatsoever kind that shall come into his possession by virtue of his office as such county treasurer, in his name as such county treasurer, in one or more banks located in the county, and designated by the board of county commissioners as the county depositories."

This section was amended by section 1, ch. 88, Session Laws of 1925, effective April 2, 1925, but the portion quoted above remained the same in the amendment.

Section 5732, C. O. S. 1921, provides as follows:

"All checks or drafts of the treasurer of such county upon the bank holding the public money shall show upon their face for what purpose they were drawn and a duplicate of said check or draft shall be attached to the warrant, voucher or order so paid."

Section 5941, C. O. S. 1921, is as follows:

"For the purpose of carrying into effect the provisions of this act, and for its proper administration, the State Examiner and Inspector is hereby empowered to promulgate and enforce such rules and regulations as may be necessary, but not inconsistent herewith, and he shall prescribe the forms of all claims, vouchers, and other accounting stationery required under the provisions thereof."

It is the theory of plaintiff that all of the banks involved in this case are presumed to have known the law relative to the handling of deposits and withdrawal of public funds; that they were presumed to know that Haynie, as county treasurer, must deposit daily all funds that came into his possession by virtue of his office in his

name as county treasurer in a lawfully designated and qualified depository and that thereafter he could not withdraw the same except upon a check or draft showing upon its face the purposes for which it was drawn, and in payment of lawfully authorized claims against Carter county.

In brief, counsel for plaintiff contend that the bank had notice of the unlawful intention of Haynie to appropriate the proceeds of the cashier's check to his own use, in violation of his trust, and in violation of the bank's trust, and that, notwithstanding this notice, the bank participated in the wrongful diversion of the funds and negligently enabled Haynie to consummate his fraud; that Haynie was not authorized, as a matter of law, to indorse checks payable to himself as county treasurer for any other purpose than to deposit the same daily, as required by section 5727, C. O. S. 1921; that the bank became liable for the proceeds of the check which it converted to itself on the unauthorized indorsement, and cannot now be heard to say that it was innocent of the facts and circumstances of this case; that these acts amounted to legal negligence and it acted at its peril, and is liable.

Counsel for defendant assert that the trial court did not err in rendering judgment in favor of defendant and against the plaintiff; that said judgment is sustained, both by the evidence and the law, and contend as follows:

"(1)  A bank designated as a depository of county funds does not become an insurer of such funds, and the relationship created by the deposit of funds is merely that of debtor and creditor.

"(2)  The defendant was not guilty of any actionable negligence or tortious conduct such as would entitle the plaintiff to recover herein.

"(3)  The plaintiff would have no right of subrogation to the rights of Carter county as against this defendant until and unless Carter county had been first reimbursed in full for its losses occurring through the defalcations of the county treasurer.

"(4)  Even if Carter county had the right to look to the Exchange National Bank for reimbursement, no right of subrogation inured to the plaintiff under the facts in this case."

Section 5931, C. O. S. 1921, provides as follows:

"It shall be the duty of the county treasurer to receive all moneys belonging to the county from whatever source they may be derived, and other moneys which by law are directed to be paid to him, and all moneys received by him for the use of the county shall be paid by him only on the warrants of the board of county commissioners, drawn according to law, and all other moneys shall be paid over by him as provided by law."

Section 5930, C. O. S. 1921, deals with the form of bond to be executed by a county treasurer. Section 5933, C. O. S. 1921, deals with the powers and duties of the treasurer, which gives the county treasurer wide discretion and authority in the handling of public funds, and requires the treasurer to keep a record and to show whether moneys received and paid out by him were received, "or paid in cash, or warrants, or orders."

Under the stipulation of facts filed in this case, the record shows that at the time when Fred Haynie purchased the $75,000 cashier's check from the Exchange National Bank of Ardmore he explained to said bank that he wanted the money for the purpose of paying county warrants held by E. G. Lewis. The stipulation recites as follows:

"Said Haynie presented to Verna Wright, teller, the said cashier's check of the First National Bank, indorsed as shown on exhibit 'H' attached hereto, and told said Verna Wright that he wanted a cashier's check issued by said Exchange National Bank direct to one E. G. Lewis in lieu of the said cashier's check of the First National Bank which he presented.

"That said Haynie at said time explained to said Verna Wright that said E. G. Lewis was a holder of certain county warrants or securities and said Haynie wanted a cashier's check of said bank issued in payment of said warrants direct to said E. G. Lewis instead of indorsing to said E. G. Lewis the cashier's check of the First National Bank of Oklahoma City for $75,000, which was payable to him as county treasurer. That he desired to handle the transaction in this way as he wanted a check record of the payment direct to E. G. Lewis. * * *

"That the officers of the Exchange National Bank had been personally acquainted with S. F. Haynie for a great many years prior to the transactions recited in this stipulation, and that prior to his election to the office of county treasurer in 1923, the said Haynie had held other offices of responsibility and trust in Carter county, during which time he had carried accounts with the Exchange National Bank, both in a personal capacity and in a fiduciary or official capacity, and that at the time when the Exchange National Bank issued to E. G. Lewis, at the request of said S. F. Haynie, its cashier's check for $75,000, involved in this suit, and at the time when said bank subsequently paid said cashier's draft, that in so far as the bank knew, or had reason to believe, the said S. F. Haynie bore a reputation of

being an honorable and upright citizen of the community."

From this stipulation of facts it is observed that Haynie at the time of securing the cashier's check represented that he wanted to use this money for the purpose for which he had a right to use the same, and it shows that his reputation and standing was such that defendant bank had a right to rely upon his representations. The following provision as contained in the stipulation is as follows:

"That neither the said teller nor said cashier of said defendant bank had any knowledge that said Haynie was intending to misapply or personally appropriate the proceeds of said cashier's check other than such knowledge as was imputed or legally implied or was given to them by reason of the foregoing circumstances."

The funds in litigation were never on deposit with the Exchange National Bank. There is nothing in this record to indicate in any way that said bank was cognizant of or privy to any understanding or intent to make any misapplication of the trust funds of Carter county. The bank had nothing whatever to do with the matters in controversy except to cash the $75,000 cashier's check presented to it by the county treasurer. It did not pay out any funds of the county on deposit with it. There is no intimation in the record that the defendant bank did not have a right to assume that S. F. Haynie, county treasurer, intended to perform his official duty.

Counsel for defendant contend that the bank designated as a depository of county funds does not become an insurer of such funds, and the relationship created by the deposit of funds is merely that of debtor and creditor. In the case at bar the funds were never on deposit in the Exchange National Bank. In the stipulation of facts it is agreed that the Exchange National Bank was at the time a duly designated depository for the funds of Carter county, and it also stipulated that the proceeds of said $75,000 check were never actually deposited in said bank. Even assume that said funds from said check were deposited in said Exchange National Bank, the relation of debtor and creditor would have existed between said bank and said Haynie as county treasurer, and said bank would have been bound to honor said Haynie's check or draft as county treasurer even though said bank might have been suspicious that said Haynie was meditating a breach of his trust. New Amsterdam Casualty Co. v. First National Bank, 144 Okla. 180, 289 P. 749; Morris on Banks and Banking (6th Ed.) vol. 1, section 317; Gray v. Johnson, L. R. 3 Eng. & Ir. App. Cas. 1.

22 R. C. L., page 223, lays down the following rule:

"The relation between a depository and the government or public corporation whose funds are deposited therein is that of debtor and creditor; the relation is the same as that between it and any other depositor. The money deposited does not remain the property of the government, but becomes the property of the bank."

The relationship in reference to a deposit of public funds was before the Supreme Court of Nebraska in the case of J. S. Bartley v. J. F. Meserve, In re State Treasurer's Settlement, reported in 36 L. R. A. at page 746. That court, in paragraph 4 of the syllabus, states as follows:

"A deposit of public moneys by a state treasurer in a legally constituted depository for public funds, in compliance with the provisions of the depository law, is in substance and legal effect a loan of the money so deposited."

In the body of the opinion, the court states:

"Under the depository law, public funds are required to be deposited by the treasurer on open account, subject to payment on the presentation of the check of the treasurer. The depositing of the moneys of the state in a depository bank by the treasurer in pursuance of law is, in legal effect, a loan of such moneys to the bank; and the relation of debtor and creditor is thereby created."

Senate Bill No. 365, which became effective on April 2, 1925, before the controversy involved herein arose, which bill appears in Session Laws 1925, page 138, ch. 88, provides as follows:

"Before directing or authorizing the deposit of any such funds aforesaid, the board of county commissioners shall take from each such bank a surety bond of some surety company authorized by the proper authorities of the state of Oklahoma to do business in said state, in a sum equal to the largest approximate amount that may be deposited in each respectively, at any one (1) time; said surety bond to be uniform and prescribed by the Attorney General of the state. Provided, that in lieu of said surety bond, or in addition thereto, security may be taken consisting of United States bonds, state bonds, or warrants, county bonds or warrants, or other bonds or warrants issued by any municipality under authoriy of and in compliance with the statutes of Oklahoma; provided, that all said warrants shall have been issued pursuant

to a legal appropriation. * * * The condition of said bond shall be that such deposit shall be promptly paid on a check or draft of the treasurer of such county, and the bondsmen of such treasurer shall not be liable for such deposit." Sec. 1.

From the provisions of this act, it is to be observed that the bank is bound to pay out the funds on the check or draft of the county treasurer, and under the holding in the case of Bartley, supra, this deposit is a general deposit, creating the relationship of debtor and creditor.

In the case of Dempsey Oil & Gas Co. v. Citizens' Nat. Bank, 110 Okla. 39, 235 P. 1104, which involved a controversy as to who deposited certain funds in said Citizens' National Bank, our own court, in considering the question of a bank deposit, in the second paragraph of the syllabus, says:

"A bank deposit without any limitations, restrictions, or qualifications, such as are usually made in the due course of business, subject to be drawn out by the depositor on demand, is a 'general deposit', and creates the legal relation of debtor and creditor between the bank and depositor; in legal effect the deposit is a loan to the bank. This is equally so whether the deposit is of trust moneys or funds which are impressed with no trust, provided the act of depositing is no misappropriation of the fund. The bank simply becomes indebted to the depositor in his fiduciary capacity."

In the body of the opinion this court quotes with approval from the opinion in the case of Duckett v. National Mechanics' Bank of Baltimore, 86 Md. 400, 38 A. 983, 39 L. R. A. 84, 63 Am. St. Rep. 513, as follows:

"If it be deposited by one as trustee, the depositor, as trustee, has the right to withdraw it, and the bank, in the absence of knowledge or notice to the contrary, would be bound to assume that the trustee would appropriate the money, when drawn, to a proper use. Any other rule would throw upon a bank the duty of inquiring as to the appropriation made of every fund deposited by a trustee or other like fiduciary; and the imposition of such a duty would practically put an end to the banking business, because no bank could possibly conduct business if, without fault on its part, it were held accountable for the misconduct or malversations of its depositors who occupy some fiduciary relation to the fund placed by them with the bank. In the absence of notice or knowledge a bank cannot question the right of its customer to withdraw funds, nor refuse (except in the instances already noted) to honor his demands by check; and therefore even though the deposit be to the customer's credit in trust, the bank is under no obligation to look after the appropriation of the trust funds when withdrawn, or to protect the trust by setting up a 'jus tertii', the right of a third party, against a demand. But if the bank has notice or knowledge that a breach of trust is being committed by an improper withdrawal of funds, * * * then it will be undoubtedly liable. In support of these general principles, if support they need at all, we may refer to Munnerlyn v. Bank, 88 Ga. 333, 14 S. E. 554; Bank v. Reilly, 124 Ill. 464, 14 N. E. 657; Board of Chosen Freeholders of County of Essex v. Newark City Nat. Bank, 48 N. J. Eq. 51, 21 A. 185—all cited in 3 Am. & Eng. Enc. Law (2d Ed.) 833, 834; Walker v. Bank, 25 F. 255, 1 Morse, Banks, art. 317; Swift v. Williams, 68 Md. 237, 11 A. 835."

To the same effect is the case of Central Nat. Bank of Baltimore v. Connecticut Mutual Life Ins. Co., 26 L. Ed. 693, in an opinion by the Supreme Court of the United States, wherein the court used the following language:

"A bank account, it is true, even when it is a trust fund, and designated as such by being kept in the name of the depositor as trustee, differs from other trust funds which are permanently invested in the name of trustees for the sake of being held as such. For a bank account is made to be checked against, and represents a series of current transactions. The contract between the bank and the depositor is that the former will pay according to the checks of the latter, and when drawn in proper form, the bank is bound to presume that the trustee is in the course of lawfully performing his duty, and to honor them accordingly."

In the case of Gray v. Johnson, L. R. 3 Eng. & Ir. App. Cas. 1, cited in the case of New Amsterdam Casualty Co. v. First Nat. Bank, supra, wherein an executrix drew out of the bank the funds belonging to the estate in favor of a mercantile firm of which she was a member and wherein it was discussed as to the seriousness in permitting bankers on mere suspicion to refuse to honor checks drawn by their customers, Lord Westbury, in an opinion therein stated:

"The relation between banker and customer is somewhat peculiar, and it is most important that the rules which regulate it should be well known and carefully observed. A banker is bound to honor an order of his customer with respect to the money belonging to that customer which is in the hands of the banker; and it is impossible for the banker to set up a jus tertii against the order of the customer, or to refuse to honor his draft, on any other ground than some sufficient one resulting from an act of the customer himself. Supposing, therefore, that the banker becomes incidentally aware that the customer being in a

fiduciary or a representative capacity, meditates a breach of trust, and draws a check for that purpose; the banker, not being interested in the transaction, has no right to refuse the payment of the check, for, if he did so, he would be making himself a party to an inquiry as between his customer and third persons. He would be setting up a supposed jus tertii as a reason why he should not perform his own distinct obligation to his customer. * * *"

In the case at bar there was created between Haynie, as county treasurer, and the bank, at most, only the relationship of creditor and debtor. There is nothing in the bond which the bank was required to execute to prevent Haynie, as county treasurer, from checking or drawing on the Exchange National Bank a cashier's check to E. G. Lewis, or any other person he might desire to deliver the same. It was not incumbent upon the bank to endeavor to foresee the use to which the county treasurer might intend to apply the funds withdrawn therefrom. The defendant bank had a right to presume that the county treasurer was honest and that his acts were lawful, and it cannot be contended that the defendant in this case became an insurer of the funds represented by the cashier's check on the First National Bank of Oklahoma City, and that in cashing this check it was guilty of actionable negligence which would authorize the plaintiff in this case to look to it for reimbursement.

In the case at bar, the defendant bank acquired no advantage or benefit directly through or from a diversion of said funds in question, and it is not shown in the stipulation nor is there anything in this record to indicate that said bank joined in the diversion of said funds with actual notice or knowledge that the diversion was intended, or that it was being carried out in any way, or that said bank became cognizant of such intention on the part of the county treasurer, or was in any way privy thereto.

We are of the opinion that the holding of this court in the case of New Amsterdam Casualty Co. v. First Nat. Bank of Oklahoma City, supra, and authorities cited therein correctly announced the law applicable to the case at bar. In that case, the court sustained the demurrer of the codefendant, First National Bank of Oklahoma City, to the petition in this case and the law announced therein is controlling and conclusive on the questions herein presented. In that case, the court says in reference to the question of whether or not the First National Bank made itself liable by accepting a deposit from Carter county without giving bond or furnishing security that these requirements are simply to insure the return of public funds to those entitled to them without loss or delay. In the instant case, so far as this record shows, the defendant bank is solvent, and the failure to give a surety bond to Carter county by the defendant Exchange National Bank is immaterial and in no way prejudices the rights of plaintiff. S. F. Haynie, county treasurer of said county, had a right to receive the funds of Carter county, and it was his bounden official duty to faithfully account for these funds. Said Haynie, as county treasurer of said county, breached the terms of his official bond and did not faithfully carry out and perform the duties of his office as required by law, and did not account for the proceeds of this cashier's check of $75,000 which came into his hands, whereby Carter county sustained a loss. Plaintiff executed said surety bond by which it guaranteed to Carter county and to all other persons that said Haynie would faithfully account for any and all funds coming into his hands as county treasurer. We are of the opinion that, under the agreed stipulation of facts, plaintiff is not entitled to recover against the defendant, the Exchange National Bank.

In view of the foregoing, it is unnecessary to discuss the right of subrogation of plaintiff as against the defendant bank.

Finding no reversible error, the judgment of the trial court is affirmed.

LESTER, C. J., CLARK, V. C. J., and CULLISON, SWINDALL, ANDREWS, and KORNEGAY, JJ., concur. RILEY, J., dissents. PUGH, Special Justice, absent. HEFNER, J., disqualified.

RILEY, J. (dissenting). It is the statutory duty of the county treasurer to make daily deposits of all funds in his hands.

It is the county treasurer's statutory duty to pay warrants by county treasurer's checks or drafts.

In this transaction the Ardmore bank did not act as depository for the county, but exchanged its cashier's check made to Lewis for a cashier's check payable to the county treasurer, thus eliminating the identification of county funds from the instrument.

The Ardmore Bank was informed that the county treasurer wanted a check record —that he did not get. The Ardmore bank was informed that the transaction, including the issuance of cashier's check to Lewis, was for the purpose of paying a third party,

Lewis. That performance was without authority of law, for no holder of warrants could be paid in that manner.

It should be borne in mind that no delivery of warrants by the purported holder was provided, but the county treasurer informed the bank that he was securing the issuance of the cashier's check for the purpose of paying Lewis, who held county warrants. What was there to prevent Lewis, in event he actually held county warrants, which he did not, from receiving the pay for them and negotiating them also? Who will say that reliance upon a stranger's honesty to the extent here involved is not negligence?

The fact remains that the regular and lawful mode of cashing county warrants is presentation of same to the county treasurer, whose duty it is to issue a county treasurer's check therefor to be paid by the county depository. The bank was charged with knowledge of the law that Haynie, county treasurer, proposed and by the aid of the bank performed a purported but false payment unauthorized by law. This, in my judgment, constituted negligence on the part of the bank. This court, regardless of the fact that plaintiff below was an insurer for hire, should not stamp with approval such acts on the part of any bank, for it opens the way for future financial disasters in the wrecking of government by unworthy officials, aided by the carelessnes of outside persons or agencies.

Section 5727, C. O. S. 1921, makes it the duty of the county treasurer of all counties to deposit all of the funds and moneys of whatsoever kind that shall come into his possession by virtue of his office as county treasurer in some one or more banks located in the county and designated by the board of county commissioners as county depositories.

The Ardmore bank must have known that these were county funds, contrary to finding of fact No. 2 by the trial court, for the simple reason that the Oklahoma City cashier's checks were drawn to Haynie, county treasurer. The Ardmore bank must have known that the county treasurer was violating section 5727, supra, in not depositing that day nor for four days theretofore the funds represented by the cashier's check for the reason that the agreed statement of facts shows that Haynie secured the cashier's check on April 12th and did not deposit it at all, but exchanged it with defendant bank on April 17th.

By section 5727, C. O. S. 1921, amended S. L. 1925, ch. 88, p. 138, sec. 1, this defendant bank, which was a county depository and charged as it was with knowledge of the law heretofore cited, under which it was the duty of the county treasurer to make daily deposits of all county funds coming into his hands, was bonded with the condition only that it would pay the deposit which by law was required to be made daily "promptly" and "on a check or draft of the treasurer of such county." It could not lawfully aid in the payment of any claim against the county nor pay to the county any fund on deposit except on check or draft of the treasurer. While this fund was not on deposit, the law will presume that done which ought to have been done, which the law demands shall be done, especially where the failure so to do is a felony. (Section 2, ch. 88, S. L. 1925, supra.)

Section 5732, C. O. S. 1921, provides that all checks or drafts of the treasurer of such county upon the bank holding public money shall show upon their face for what purpose they were drawn and a duplicate of said check or draft shall be attached to the warrant voucher or order so paid.

Nevertheless, as was said in the companion case concerning the Oklahoma City bank's liability:

"* * * It remained for the Ardmore bank to convert the cashier's check into an instrument not subject to identification as county funds." New Amsterdam Cas. Co. v. First Nat. Bank, 144 Okla. 180, 289 P. 749.

That aided the misappropriation—that constituted negligence under the law, for the bank was charged with notice that such a transaction was irregular and apart from the due course, for it has been repeatedly held by this court that all who deal with agents of municipalities do so with knowledge of the limitations of such agents' authority.

Section 5931, C. O. S. 1921, provides that it is the duty of the county treasurer to receive all money belonging to the county, but that:

"All moneys received by him for the use of the county **shall be paid by him only on the warrants of the board of county commissioners, drawn according to law.** * * *"

I am of the opinion that the county treasurer is not authorized by section 5930, C. O. S. 1921, nor any other statute to pay cash or the equivalent of cash to anyone except a county depository or fiscal agency, and then only upon the safeguards otherwise provided by law.

The security of public funds is requisite to the safety of the state.