**CHICAGO, R. I. & P. RY. CO. et al. v. GREAT WESTERN OIL CO.**

No. 16042—Opinion Filed Sept. 14, 1926.

Rehearing Denied Nov. 30, 1926.

**1. Carriers—Limitation of Actions—Burden of Proof.**

The burden is on the carrier in a common-law action to plead the statute of limitations against recovery unless the plaintiff's petition shows upon its face that the cause of action was barred.

**2. Same—Contract Limitation Under Interstate Commerce Acts—"Reasonable Time for Delivery" of Freight as Jury Question.**

Under a provision of the bill of lading issued under acts of Congress relating to interstate commerce, requiring suits to be brought within two years and one day after a reasonable time for delivery has elapsed, ascertainment of what was a reasonable time for delivery was a question of fact for the jury.

**3. Appeal and Error—Questions of Fact—Conclusiveness of Verdict.**

In the trial of a law action to the jury, if there is any testimony which reasonably tends to support the verdict of the jury, the cause will not be reversed for insufficiency of the evidence.

(Syllabus by Pinkham, C.)

Commissioners' Opinion, Division No. 5.

Error from District Court, Tulsa County; Edwin R. McNeill, Judge.

Action by the Great Western Oil Company against the Chicago, Rock Island & Pacific Railway Company and St. Louis-San Francisco Railway Company, to recover damages on account of loss of a car of gasoline. Judgment for plaintiff, and defendants bring error. Affirmed.

W. F. Collins, W. R. Bleakmore, A. T. Boys, and Stuart, Sharp & Cruce, for plaintiffs in error.

Hulette F. Aby, William F. Tucker, and Frank Settle, for defendant in error.

Opinion by PINKHAM, C. The defendant in error, the Great Western Oil Company, as plaintiff, instituted this action on the 22nd day of April, 1922, against the Chicago, Rock Island & Pacific Railway Company and the St. Louis-San Francisco Railway Company, to recover damages alleged to have been suffered by it on account of alleged negligence of said railway companies in causing the loss of 9,960 gallons of gasoline shipped by Cosden & Company, from Tulsa, Okla., to the defendant in error at El Paso, Tex., on February 29, 1920. The parties will be referred to as they appeared in the trial court. The Chicago, Rock Island & Pacific Railway Company will be referred to as the Rock Island, and the St. Louis-San Francisco Railway Company as the Frisco.

After the issues were joined the cause was tried before a jury, and at the close of all the evidence the defendants demurred to the same, which demurrer was overruled and exceptions saved. Defendants' motion for a directed verdict was also overruled and exception reserved.

After hearing the instructions of the court the jury returned their verdict in favor of the plaintiff in the sum of $1,892.40, with interest thereon at six percent. per annum from June 1. 1920. Thereafter, the defendants filed their motion for a new trial, which was, by the court, overruled. Judgment was rendered in accordance with the verdict. From the order overruling the motion for a new trial and from the judgment rendered. the defendants have duly appealed to this court by petition in error and case-made attached.

For reversal of the judgment various specifications of error are presented in the petition in error, and in defendants' brief; but the principal propositions submitted are: First. the court erred in overruling the demurrer to the evidence and motion for a directed verdict, and in refusing to give defendants' requested instructions 1, 2, because the alleged right of action was extinguished by limitation in the bill of lading at the time the suit was instituted; second, that the verdict of the jury is not sustained by the evidence and is contrary to law.

Plaintiff's petition contains as exhibit "A" an alleged copy of the original bill of lading. No reference, however, is made in the petition. or in the exhibit, to any provision relating to time for bringing suit. The defendant Frisco Railway Company, after the filing and overruling of its general demurrer to

the petition, filed its answer, in which it alleged that said shipment of gasoline was carried in accordance with the terms of the contract as set out in the bill of lading, a copy of which was attached to its answer. That exhibit contained certain conditions printed on the back of the bill of lading, among which conditions appears the following:

"* * * Suits for loss, damage or injury shall be instituted not later than two years and one day after the day on which notice in writing is given by the carrier to the claimant that the carrier has disallowed the claim or any part or parts thereof, as specified in the notice."

The defendant Rock Island Company filed merely on unverified general denial.

The following are the material facts disclosed by the record: On February 29, 1920, the plaintiff purchased a tank car of gasoline through another company, the Union Petroleum Company, of Chicago, Ill., from Cosden & Company, an oil refinery at Tulsa, Okla. Cosden & Company delivered the car of gasoline to the plaintiff by turning it over to the defendant Frisco Railway Company for shipment over that road to Oklahoma City, there to be delivered to the defendant Rock Island Railway Company, and by the latter to be carried to a point in Texas, and turned over to a third road for carriage and delivery to the plaintiff at El Paso, Texas.

The defendant Frisco Railway Company carried the car in question to Oklahoma City, where on March 3, 1920, it was turned over to the defendant Rock Island Railway Company in good condition. The latter road carried the car apparently over one division of its road to El Reno. Okla., at which point, at 1 o'clock p. m., on March 4, 1920, the car was apparently turned over to another division of the road to a new train crew and still in good condition.

The car in question was then carried by the defendant Rock Island Railway Company to Indianapolis, Okla., at which point a portion of the contents of the car had escaped through the outer valve of the car, and the said defendant Rock Island Railway Company removed the balance of the contents and sold it for its own use.

Sometime after April 27, 1920. the plaintiff received information that the contents of the car had been lost or removed, and that it would not be delivered to the plaintiff. Plaintiff then filed its claim for recovery, the claim being first presented to the El Paso & Southwestern Railway Com-

pany, which company was to have been the delivery carrier, and the claim was, by the latter railroad, turned over to the defendant Rock Island Company. The Rock Island Railway Company, on May 13, 1920, refused in writing to pay the plaintiff for the gasoline in question; and on April 22, 1922, the plaintiff instituted this action against the said railway companies for the value of the gasoline.

On the said 29th day of February, 1920, the Frisco Railway Company was still under control of the Director General of Railroads, but federal control ceased on that day by Act of Congress of February 28, 1920 (Transportation Act, 41 Stat. L. 456).

Chapter 176, 38 Stat. L. 1196, amending section 20 of the Interstate Commerce Act and the amendments thereto, including that of 1906, contains the following language:

"Provided further that it shall be unlawful for any such common carrier to provide by rule, contract, regulation, or otherwise a shorter period for giving notice of claims than 90 days, and for the filing of claims for a shorter period than four months, and for the institution of suits than two years: provided, however, that if the loss, damage, or injury complained of was due to delay or damage while being loaded or unloaded, or damaged in transit by carelessness or negligence, then no notice of claim nor filing of claim shall be required as a condition precedent to recovery."

The bill of lading introduced in evidence by plaintiff provides:

"* * * Suits for loss, damage, or delay shall be instituted only within two years and one day after delivery of the property, or, in case of failure to make delivery, then within two years and one day after a reasonable time for delivery has passed."

The Transportation Act of 1920 provides as follows:

"Section 200 (a) federal control shall terminate at 12:01 a. m., March 1, 1920; and the President shall then relinquish possession and control of all railroads and systems of transportation then under federal control and cease the use and operation thereof."

The provision of the Act of 1920, supra, with reference to the time of bringing suits against carriers, is as follows:

"Provided, further, that it shall be unlawful for any such common carrier to provide by rule, contract, regulation, or otherwise, a shorter period for giving notice of claims than 90 days, for the filing of claims than four months, and for the institution of suits than two years, such periods for institution of suits to be computed from the day when notice in writing is given by the carrier to the claimant that the carrier has disallowed than two years, such period for institution the claim or any part or parts thereof specified in the notice."

It will thus be seen that the bill of lading was issued during the time of federal control, and the loss occurred under the Transportation Act of 1920.

Considerable discussion is made in the briefs of the respective parties as to whether the provision with reference to the time for instituting suit in case of loss or failure to deliver is to be computed as provided in the bill of lading issued under the Federal Control Act, or as provided in the Transportation Act of 1920. Under the bill or lading issued on the day federal control terminated. suit was to be instituted "within two years and one day after a reasonable time for delivery has passed." Under the Transportation Act, which became effective March 1, 1920, the time for the institution of suits is to be computed from the day when notice in writing is given by the carrier to the claimant that the carrier has disallowed the claim.

The defendant Rock Island Railway Company denied the claim of plaintiff in writing in a letter directed to the El Paso & Southwestern system on May 13, 1920, and suit was filed April 22, 1922, and therefore within the time as provided in the Transportation Act of 1920, and as a matter of fact within the contract as pleaded by the Frisco Railway Company in its answer. However, assuming that suits for loss or failure to make delivery must be instituted only within two years and one day after a reasonable time for delivery has passed, as contended by defendants, it is clear, we think, that the question of what constituted a reasonable time for delivery of the gasoline in question from Tulsa, Okla., to the plaintiff at El Paso, Tex., is one of fact for the jury.

In the case of Humphrey-Cornell Co. v. Hines, Director General of Railroads et al. (Conn.) 115 Atl. 561, which case involved a proposition similar to the one presented in the instant case, the proof there showed that more than two years and six months had elapsed before suit was brought, and the plaintiff was fully advised that the goods were lost or would not be delivered. Plaintiff filed his claim in March, 1917, and did not file suit until May 1, 1919. To the plaintiff's petition the defendant set up, as one of his defenses, that the action was not brought within two years and one day after a reasonable time for delivery, and supported that defense with proof that it had been

more than two years and six months from the date of shipment to the date of bringing of the suit. The trial court found in favor of the defendant, and on appeal the Supreme Court of Connecticut held that under the facts proved in the case the court was justified in finding that six months was reasonable time for delivery. In the fourth paragraph of the syllabus in the cited case it is held:

"Under a provision of the uniform bill of lading requiring suits to be brought within two years and one day after a reasonable time for delivery has elapsed, ascertainment of what was a reasonable time for delivery was a question of fact for the court in a case tried by the court."

In Hutchinson on Carriers (3rd Ed.) vol. 2. sec. 652, the law as to reasonable time for delivery is stated as follows:

"What is a reasonable time must be determined by the length of the journey, the mode of conveyance, the weather, the state of the roads, the season of the year, the nature of the goods, the amount of business, if from any cause there should be an unusual temporary influx of freight, and any other circumstances which may properly be taken into consideration by a jury in finding whether the carrier has been guilty of unnecessary and improper delay; for this question must always be one of fact."

The defendants in the instant case neither pleaded nor proved what a reasonable time was. It is contended that reasonable time was conclusively shown by certain of plaintiff's evidence, in that it was shown that Cosden & Company had the empty car back in their plant on March 16, 1920, and that such knowledge of Cosden & Company was constructively the knowledge of plaintiff, and therefore plaintiff should be held to have known at that time that the gasoline would not be delivered to it at El Paso, Tex. We are unable to discover any evidence that Cosden & Company, or any of its representatives were the agents of plaintiff for any purpose except that they furnished, loaded, and delivered the gasoline in the car to the defendant railway companies, for carriage to the plaintiff. They were not in any sense the agents of plaintiff after delivery of the car to the defendant Frisco Railway Company.

It is further urged that reasonable time for delivery was shown by the traffic manager for Cosden & Company, in that he wrote a letter to the defendant Rock Island Railway Company, on April 17, 1920, inquiring what had happened to the gasoline. The traffic manager of Cosden & Company was merely the agent of that company, who

owned the tank car in which the gasoline was shipped, and which company had made and sold the gasoline to the plaintiff on the order of the Union Petroleum Company of Chicago.

The undisputed testimony of the plaintiff was that it never learned or knew of the loss of the gasoline until the last of April or the first of May, 1920, and that prior to that time it was still expecting the gasoline to be delivered to it at El Paso, Tex.

A careful examination of the record leads to the conclusion that there is nothing to justify a reversal on the ground that plaintiff was barred by a limitation of time. Defendants' demurrer to the evidence and motion for a directed verdict were, we think, properly denied.

Under the second proposition submitted it is contended that the court erred in overruling the demurrer to the evidence and motion for a directed verdict because the evidence fails to show that the interior condition of the car was good at the time of loading; that the valve was properly seated prior to the time of loading; that there is no evidence showing the capacity of the car nor the amount of gasoline loaded therein. The car in question belonged to Cosden & Company and not to the carriers, and it was loaded by Cosden & Company, and it was conceded at the trial that plaintiff could not recover if the loss of the gasoline was due directly to a defect in the car or in the adjustment of the inner valves before delivery to the carrier. The record, however, discloses evidence of a very positive and convincing character on behalf of the plaintiff that the car was in good condition when delivered to the defendant Frisco Railway Company for carriage, and that the car was properly loaded and the valves properly adjusted. There is no dispute in the evidence that when the Frisco Railway Company received the car from the Cosden Company at Tulsa on the 29th day of February, 1920, it was apparently in good condition, and that when the Frisco Railway Company delivered the car to the defendant Rock Island Railway Company at Oklahoma City, on the 3rd day of March, 1920, the car was in the same condition. In fact, the Frisco Railway Company in its answer admits that the car of gasoline was carried over its line to Oklahoma City, and at that time delivered in good condition to the defendant Rock Island Railway Company, for transportation to destination at El Paso, Tex. No evidence was offered by the defendant Rock Island Railway Company, as to what was done with or

to the car in question from the time it received it on March 3, 1920, at Oklahoma City in good condition until the defendant Rock Island Railway Company's witness, its freight conductor, testified that the car was in good condition apparently when he received it at El Reno, and that it commenced leaking at or near Indianapolis, Okla., out of the outer valve, according to his testimony, upon which the cap was broken and ice was observed around it. This testimony was introduced by the defendants on the theory that it indicated a fault on the part of the shipper in having a defective valve or an improper adjustment thereof.

In rebuttal of this testimony of the defendants' witness there was evidence introduced that the cap was not bursted or out of repair when the car was returned to Cosden & Company on the 16th day of March, 1920, and there was no evidence that the car had been repaired in any particular by the defendant Rock Island Railway Company before it was returned to Cosden & Company. Furthermore, there was evidence, which appears to be without dispute, that the car in question was equipped with what is termed a spring type valve, and that a freezing of water in the outlet chamber simply has the effect of pushing up the valve and does not cause the cap to burst. As to the contention that there was no evidence showing the capacity of the car nor the amount of gasoline loaded therein, it is sufficient to say that these questions of fact were properly submitted to the jury by the instructions of the court, and were determined by the jury adversely to the contentions made by the defendants.

In other words, the question whether the loss was due to a defective condition of the car when delivered to the defendants for carriage, the question of the capacity of the car and the amount of gasoline loaded therein, were all properly submitted to the jury; and there being ample evidence to support the jury's verdict this court will not attempt to weigh the evidence nor disturb the jury's finding.

It is further contended that the court erred in failing to instruct the jury on the burden of proof; in the giving of certain instructions; and in refusing to give defendants' requested instructions.

The burden of proof was upon plaintiff to prove only that it delivered to the defendants for carriage the amount and kind of gasoline in question, the value thereof, that the shipment was delivered in good condition to the defendants for carriage, and that the defendants failed to deliver to plaintiff at destination.

The defendants admitted that they received the shipment for carriage to El Paso, Tex., and that the gasoline was lost on the line of the defendant Rock Island Railway Company, at Indianapolis, Okla. Plaintiff proved by proper evidence that it delivered to the defendants 9,960 gallons of 56-57 gravity gasoline loaded in the tank car in question in good condition for carriage, and proved by proper evidence what the market value was at the place of shipment. The defendant carriers then had the burden of proving that the admitted loss of the gasoline was due to some cause which under the law would exempt them from paying for the loss.

Instruction No. 2, given by the court, reads as follows:

"You are instructed that a railroad company is bound to exercise reasonable care and diligence to deliver safely at their destination goods intrusted to it. In case the goods are injured, lost, or destroyed, the railroad company's liability is not confined merely to such loss as is the consequence of its own negligence or want of skill, but it is also responsible and liable for all losses or damages which may happen to the goods while in its charge for the purpose of transportation and delivery, though occasioned by unavoidable accident or by any casualty whatever, and nothing will excuse or discharge but an injury, loss or destruction caused by one or more of the following things: First, by the act of God, or of the public enemy; second, acts of public authority; third, the inherent nature of the goods; and fourth, the acts of the owner. And in this connection you are instructed that there is no evidence involving the question of the public enemy or acts of public authority."

It is argued that this instruction is defective for this reason, among others: That it told the jury that the defendants would not be liable if the loss was caused by an act of God, or the public enemy, acts of public authority, the inherent nature of the goods or the acts of the owner, but that a pronounced defect lies in the fact that these indefinite terms were left undefined.

We are unable to discover from the evidence anything to support any of these defenses named in the instructions except the defense that the car was defective, or that it had been improperly loaded, or the outlet valve appliance improperly adjusted. These matters all came under the term "acts of the owner," and were sufficiently covered by the court's instruction No. 3. The in-

struction complained of embodies the elements of the common-law rule applicable to cases of this character, which makes the common carrier engaged in interstate commerce under acts of Congress liable not only for negligence, but as an insurer subject to prescribed exceptions. Cincinnati, N. O. & T. P. Ry. Co. v. Rankin, 241 U. S. 319, 60 L. Ed. 1022.

In the court's instruction No. 3 complained of the court told the jury that:

"If such loss was due to any defect in the car, or to a misapplication of some appliance thereof on the part of Cosden & Company at the time the said car was delivered to the St. Louis-San Francisco Railroad Company for transportation as pleaded by the plaintiff herein, then and in such event the loss would fall upon the shipper and the verdict should be for the defendant."

These instructions sufficiently cover the matters contained in the defendants' requested instructions, and are, we think, correct statements of the law applicable to the issues involved in the case, and, when considered in connection with the other instruction, fully and fairly presented the conflicting theories of the parties.

Upon a careful examination of all the instructions given and of the instructions requested by the defendants, we are impelled to the conclusion that no reversible error was committed by the court.

Upon the whole case as disclosed by the record before us, we think the judgment was correct and should be affirmed.

By the Court: It is so ordered.

Note.—See under (1) 37 C. J. p. 1213, §718; p. 1216, §719. (21 10 C. J. p. 392, §601 (Anno). (3) 4 C. J. p. 853, §2834; 2 R. C. L. 193; 1 R. C. L. Supp. p. 432; 4 R. C. L. Supp. p. 90; 5 R. C. L. Supp. p. 79.