## AETNA CASUALTY & SURETY CO. v. LOCAL BLDG. & LOAN ASS'N.

No. 20330. Opinion Filed Feb. 28, 1933.

142

Green & Farmer, for plaintiff in error.

Everest, Vaught & Brewer, for defendant in error.

BUSBY, J. This is an appeal from a judgment rendered by the district court of Oklahoma county sustaining a demurrer to the petition and dismissing the case.

The parties will be referred to as they appeared in the trial court.

The plaintiff (plaintiff in error herein) filed its action in the district court of Oklahoma county in March of 1927, seeking to recover from the defendant, Local Building & Loan Association (defendant in error herein), the total sum of $12,843.46, on four causes of action. The different causes of action may be considered collectively. The following is the substance of the facts as stated in petition.

Defendant, Local Building & Loan Association, is a domestic corporation, with its principal place of business located at Oklahoma City. During May and the subsequent months of the year 1925, it was conducting its business in the city of Henryetta, Okla., through its agent, R. B. Campbell, through whom it made its loans and collected the installments due thereon. Campbell made monthly remittances of the collections thus received to the defendant association. During the same period of time Campbell was treasurer for the Henryetta school district. The plaintiff herein was surety on his official bond conditioned upon the faithful performance of his official duty.

Several bank accounts are concerned in this case. Campbell carried an account in the Henryetta State Bank in the name of Local Building & Loan Association, R. B. Campbell, agent. He carried his personal account in the same bank. Funds of the school district were on deposit in that bank as well as the Citizens Bank of Henryetta. On July 3, 1925, Campbell drew a check against the account of the Local Building & Loan Association, R. B. Campbell, agent, to the defendant in the sum of $3,225.81, which purports to represent June, 1925, collections, collected by Campbell as agent of the defendant association. This check was mailed to the defendant at Oklahoma City and by the defendant deposited in due course, reaching the Henryetta State Bank for payment

on July 14, 1925. When the check was drawn, the account on which it was drawn contained the sum of $2.26. On the 9th day of July, 1925, Campbell drew out of the funds of the school district in the Citizens Bank of Henryetta, $3,250. With this he procured a cashier's check payable to his individual order, and on the same day deposited this sum in his personal account in the Henryetta State Bank, at the same time drawing a personal check on his personal account for the sum of $3,250 and deposited it in the account of the Local Building & Loan Association, R. B. Campbell, agent. His personal account was overdrawn when he deposited the money in it and overdrawn after he had taken it out. This deposit was used by the bank in meeting the check mailed to the Local Building & Loan Association bearing date of July 3, 1925.

The above transactions formed the basis of the first cause of action. The second, third, and fourth causes of action were based upon similar transactions occurring in the subsequent months of September, October, and November, respectively. The details of these subsequent transactions are herein omitted for the reason that their recitation would serve no useful purpose. All of them were similar in character. In each of them, Campbell drew a check on the special agent's account purporting to represent the previous month's collections. The checks were mailed to the defendant association at Oklahoma City and there received and placed in the process of clearance by other agents of the defendant. While each check was in the process of clearance, Campbell, in order that it might be paid when presented, transferred the funds of the school district under his control as treasurer through his personal account. On each occasion there was only a small balance and on some occasions an overdraft in both the personal account and the special agent's account at the time of the transactions. It is apparent that these accounts were used by Campbell as a convenient means of transferring the money of the school district to the defendant without revealing to either the defendant or the school district what was going on. On each occasion the complete transfer from the school district account to the special agent's account was accomplished in the same day.

Plaintiff alleges that the defendant association, through its agent and representative, Campbell, had actual and constructive knowledge of the disposition being made of the school board funds and received said funds with that knowledge.

The plaintiff, by reason of its obligation on the surety bond, was compelled to, and did reimburse the school district for the loss it has sustained and by reason thereof was subrogated to the rights of the school district in connection with each of the transactions above referred to. Each of the remittances to the Local Building & Loan Association, together with the surrounding and attending circumstances, forms the basis of a separate cause of action, the first cause of action being for the sum of $3,320, the second for the sum of $3,215.11, the third for the sum of $3,693.72, and the fourth for the sum of $2,611.14.

The trial court sustained a demurrer to each of the four causes of action contained in the petition of the plaintiff on the grounds that the facts therein pleaded did not constitute a cause of action. Plaintiff elected to stand on the petition. The court thereupon dismissed the case and the plaintiff perfected its appeal to this court. For the purpose of this review, the facts as stated in the petition are deemed to be true.

A survey of the facts as above outlined will reveal that we are confronted with the problem of determining which of two innocent parties shall suffer a loss. This is always a perplexing problem, and, in this particular situation, the adjudicated cases are by no means in harmony as to the proper ultimate result.

The identical problem presented by this case does not seem to have previously confronted this court. A correct solution requires a review of the rules of law involved, together with an examination of the reasons for some of these rules, in order to determine their proper application.

The plaintiff urges that the defendant is liable because the money was taken by its agent under circumstances amounting to fraud, and further contends that notice of the fraudulent manner in which the money was acquired was imputed to the defendant through its agent, Campbell.

The defendant contends that the money lost its trust character by passing through the bank account of Campbell and through the special agent's account at Henryetta. That when it reached the defendant it was freed from its trust character and untainted by fraud. The defendant also urges that the knowledge of the agent, Campbell, should not be imputed to the defendant because it concerns a transaction in which the agent was engaged in perpetrating a fraud upon the defendant.

. The funds of the school district were

trust funds so long as they remained in the hands of the treasurer.

It is quite apparent that they could not legally be used by the treasurer in connection with his own business or in furtherance of the business interest of the Local Building & Loan Association. His acts in so using them constitute a misappropriation and embezzlement. The defendant, however, contends that, even though the funds were misappropriated and embezzled, as soon as they reached the personal bank account of Campbell, they lost their trust character and could not be pursued further. Let us examine the merits of this contention. In support of it the defendant cites a number of authorities to the effect that the depositing of this money in the bank by Campbell created, as between Campbell and the bank, the relation of debtor and creditor. Brady v. American National Bank of Oklahoma City, 120 Okla. 159, 250 P. 1006.

This rule is well settled in this jurisdiction and finds support in the more recent decisions of New Amsterdam Casualty Co. v. First National Bank of Oklahoma City, 144 Okla. 180, 289 P. 749, and New Amsterdam Casualty Co. v. First National Bank of Oklahoma City, 154 Okla. 74, 6 P. (2d) 779, in which cases the reason for the rule and its application is carefully considered. It is designed for the purpose of protecting a bank which in good faith and without notice (of infirmities) receives trust funds from one of its depositors and subsequently pays the same out without any knowledge that they are impressed with a trust character. This rule has no application as between the beneficial owner of the funds and the depositor. It could only be invoked and considered in this case if the action were being prosecuted against the bank. The true rule applying to the situation in the case at bar is announced in the case of Pollock v. Leonard & Braniff, 112 Okla. 276, 241 P. 158, wherein syllabus paragraphs 4 and 5 read as follows:

4. "Equity will follow trust money through any number of transmutations, and restore it to the owner so long as it can be identified in its original or substituted form.

5. "Where money impressed with a trust is converted by the wrongdoer into a negotiable instrument, such instrument will be impressed with the trust in the hands of such wrongdoer or his assignee with notice."

And where in the opinion the court said:

"The transmutation of the original $6,000 check into a cashier's check, and the cashier's check into the form of a New York draft, in no way alters the situation.

" 'So long as the trust property can be traced and followed into other property into which it has been converted, that remains subject to the trust. The product or substitute has the nature of the original imparted to it. The depositing of trust money in a bank, although it creates the relation of debtor and creditor between the bank and the depositor, does not change its character, or relieve the deposit from the trust. It is not the identity of the form, but the substantial identity of the fund itself, which is the important thing'."

The correct rule supported by the decisions of this court and the appellate courts of other jurisdictions is that trust funds may be traced through any number of transactions so long as they may be identified until they reach the hands of an innocent holder for value.

The funds in this case are traced into the possession of the Local Building & Loan Association. The right of that association to retain them depends upon whether or not it is an innocent holder for value.

Let us first see whether the defendant is an innocent holder, omitting for the present any consideration of whether it has parted with value, suffered detriment, or forborne the assertion of any right by reason of the receipt of the money. Money and funds are highly negotiable and the stability of trade and the preservation of commerce depends upon the maintenance of this high degree of negotiability. If the agent, Campbell, had used the funds of the school district in payment of the purchase price of property, or to third parties who took the money without notice of its source, no one would contend that it could be recovered from the innocent third parties. An innocent holder is one who receives money without notice of infirmities or defects in its title. It is not contended here that the defendant had any actual notice of the trust character of the funds except such knowledge as may be imputed to it through its agent, Campbell.

In this connection it is the general rule of law that the knowledge of an agent is imputed to the principal. The reason for this rule recognized by most courts, is that it is presumed the agent will communicate his information to the principal. This reason has been criticized by some eminent authorities who urge that the real reason is based upon the broader ground of policy and expediency to safeguard the affairs of business and society. 2 Pomeroy on Equity Jurisprudence (4th Ed.) par. 676.

Regardless of the reason for the rule, there is a universally recognized exception, namely: that the knowledge of the agent will not be imputed to the principal when

such knowledge concerns a transaction in which the agent is, "engaged in the commission of an independent fraudulent act on his own account and the facts to be imputed relate to this fraudulent act." (21 R. C. L. 844).

The reason for this exception recognized by the authorities, which place the reason for the rule upon the basis of presumed communication, is that where the agent is committing a fraud it would be contrary to common sense to presume that he would communicate the facts to his principal. The reason for the exception recognized by the authorities who place the rule upon the ground of expediency and policy, is that when engaged in the perpetration of a fraud, the agent is not really acting for his principal but is really acting for himself, entirely outside the scope of agency.

Regardless of the reason, both parties to this controversy recognize the existence of the rule and the exception thereto as above outlined. The defendant urges that the case falls squarely within the exception of the rule; that Campbell was, throughout the transactions in this case, perpetrating a fraud upon the defendant; that in taking the money from the school district he was acting outside the scope of his agency in committing an independent fraudulent act of his own. No disagreement exists between the parties that Campbell's act in taking the money from the school district was fraudulent. The plaintiff, however, urges that the transaction does not fall within the exception mentioned above, and in support of this position states that there is a qualification to the exception, or exception to the exception, the gist of which is that where the agent, though engaged in perpetrating an independent fraudulent act on his own account, is the only representative of the principal, his knowledge is imputed to the principal, falling within the general rule imputing knowledge to the principal. This qualification to the exception has been concisely stated by the California court in the case of National Bank of San Mateo v. Whitney, 180 P. 845, in which case syllabus paragraph 13 reads as follows:

"The rule that, where an agent receives notice, it is not imputed to the principal, if the agent is engaged in committing an independent fraudulent act upon his own account, does not apply, where the agent is sole representative of the principal in the transaction, and does not deal with the principal or with any other agent acting for him; in such case the knowledge of agent being imputed to principal."

Where there is some division of authority as to the existence of this qualification, the majority rule seems to favor its recognition. There is, however, a great deal of disagreement and lack of harmony in the decisions as to its application. Neither are the decisions in accord as to the reason for the qualification.

As we view this case it is unnecessary for us to review these decisions at length for the reason that the qualification does not apply to the case at bar. Campbell was not the only agent of the defendant in the transactions. We refer especially to that portion of the transactions where the monies were utlimately received by the defendant at its Oklahoma City office. The special agent's account in the Henryetta State Bank on which the checks to the defendant were drawn was used only as convenient method of transmitting the money to the defendant at Oklahoma City. Inasfar as these transactions were concerned, it was merely a conduit through which the money passed. At the time each of the checks was written and mailed to the Oklahoma City office, there was practically no money in the special agent's account to meet it. The money of the school district was deposited in said account by Campbell while the checks were outstanding and in the process of clearance. The checks mailed to Oklahoma City were received and placed in the process of clearance in Oklahoma City by other agents of the defendant company. It appears to have been an important part of the plan by which Campbell operated to transmit this money to Oklahoma City in such a way that the other agents and agents and officers of the defendant company would be misled into believing that it was the proceeds of legitimate collections by Campbell in the course of his agency, and it is also apparent and logical that this deception thus practiced by Campbell on the other agents of the company was successful over a period of several months. Therefore, it seems to us obvious that with the proper application of the rule, the qualification mentioned above has no bearing on this case for the reason that in the receipt of the money by the defendant company, the agent, Campbell, was not the only agent of the defendant connected with the transactions. We, therefore, hold in this connection that the knowledge of the agent, Campbell, was not imputed to the defendant.

This conclusion is consistent with other reasons for the rule which we may prefer to sanction. If the rule is based upon presumption that the agent will communicate his knowledge to his principal, then certainly no presumption can be indulged herein that Campbell would have communicated to

the defendant any information concerning facts which would have lead to a discovery of his wrongdoing. It is likewise apparent that in taking the money from the school district, Campbell was in reality acting in his own behalf with a view to prevent discovery of his fraudulent conduct. He was committing an act entirely outside the scope of his agency. The conclusion reached above is consistent with the decision of the trial court and an important element thereof. However, it is not the only element necessary to justify sustaining a demurrer to the petition.

It is necessary in order for the defendant to successfully prevail and hold the money that, in addition to being innocent of its trust character at the time of its receipt, it shall have parted with some value, suffered some detriment, or forborne the exercise of some right which it might otherwise have asserted in order that it may be considered a holder for value.

Neither the law nor equity pursues trust funds after the rights of innocent parties have intervened. Thus, in the American National Bank Cases, cited, supra, the plaintiff was not permitted to hold the bank liable because the bank was without knowledge of the character of the trust funds it had paid out upon the request of a depositor. The bank had suffered a detriment. It is a reasonable inference from the petition in this case that the agent, Campbell, used the funds of the school district for the purpose of concealing his embezzlement of the funds of the Local Building & Loan Association. It is quite likely that had the funds of the school district not been so used, the misconduct of Campbell would have been discovered upon his failure to make the monthly remittance in July. In other words the discovery of his misconduct would have enabled the defendant association to prevent future losses, and to the extent that they suffered future losses they have suffered a detriment, and their position has been altered by reason of the receipt of the fund and to that extent their rights as innocent holders have intervened.

In inferring that the defendant suffered detriment by being prevented from discovering the misconduct of its agent, we are viewing the matter from the defendant's standpoint and drawing an inference from the petition that does not affirmatively appear therein. Neither is it a necessary allegation of the petition. While it is stated in the petition that each of the checks mailed to the defendant association by Campbell purported to represent money collected during the previous calendar months by Campbell as agent of the defendant association, it does not affirmatively appear that such monies of the defendant were, in fact, collected by Campbell and embezzled by him. In order for those matters to be properly considered by the court, it should be pleaded and proved by the defendant.

We cannot say as a matter of fact in passing upon the demurrer to the petition that the defendant has suffered a detriment by reason of the receipt of the funds. Neither can we say that it has not. If upon pleading and proof it appears that the receipt of the funds by the defendant association prevented discovery of the fraudulent acts on the part of Campbell, and enabled Campbell to embezzle additional funds of the Local Building & Loan Association, then that association will be shown to have suffered detriment to the extent of the additional funds embezzled and will be an innocent holder for value of the funds received from Campbell to that extent. If, on the other hand, the receipt of funds by the defendant association all took place after the embezzlement on the part of Campbell had occurred, or if there was in truth and in fact no embezzlement of the defendant's funds made by Campbell, then an entirely different situation presents itself. We, therefore, conclude that the demurrer should have been overruled and the defendant permitted to answer.

We have refrained from analyzing in the previous portions of this opinion the authorities cited in the briefs for the reason that in the authorities the various questions herein involved are so commingled, an analysis thereof would break the sequence of the opinion.

The plaintiff places considerable stress upon the decision of the United States Supreme Court in the case of United States v. State National Bank of Boston, 24 L. Ed. 647. In that case the defaulting agent, one Hartwell, by a series of transactions, used the money and credit of the State National Bank of Boston to replace money that he had previously embezzled. It is distinguished in that respect from the case at bar in that in this case it is apparent that the money was being used by the agent, Campbell, to cover up and conceal a series of current embezzlements. Another case relied upon by the plaintiff in this action is the case of Atlantic Cotton Mills v. Indian Orchard Mills, 147 Mass. 268, 9 Am. St. Rep. 698. This case is a leading case upon the principle involved in the case at bar, and is so cited in numerous cases in which the questions herein involved are concerned. It has been

both approved and criticized. The third syllabus paragraph reads as follows:

"Principal must be regarded as acting with with knowledge of a fraudulent act when he is represented solely by an agent who has such knowledge."

The facts in the Atlantic Mills Case, supra, are briefly stated and criticized in the case of Bank of Overton v. Thompson (C. C. A., 8th Circuit) 118 Fed. 798:

"In the case of Atlantic Cotton Mills v. Indian Orchard Mills, 147 Mass. 268, 17 N. E. 496, 9 Am. St. Rep. 698, which is criticised in the extract from the case last cited, one Gray was the treasurer of both the plaintiff and defendant companies, and for sometime had been embezzling largely from each. To cover his defalcations in the plaintiff company at an expected periodical examination, he had placed with its funds fraudulent checks of the defendant company which he had drawn payable to the order of plaintiff company, to the amount of more than $200,000, and these were in possession of plaintiff company when the defalcations were discovered. Prior to that no officer of either company, except Gray, knew anything of such checks. Plaintiff sought to recover on them, as having received them innocently in payment of Gray's indebtedness to it through his defalcations. The court held that as no officer of the plaintiff, save Gray, had acted on its behalf in receiving the checks, the plaintiff was bound by Gray's knowledge of the fraudulent character of the checks, and could not recover. It also placed the decision on the stronger reason, deducible from the real character of the transaction, namely, that the placing of these checks by Gray among the funds of plaintiff was never intended by Gray or any one as a payment of Gray's indebtedness to plaintiff, nor as vesting the title to them in plaintiff, but only as a temporary ruse, to hide Gray's defalcation for the time. The court added that, had Gray intended to pay his indebtedness * * * by thus secretly transferring to it the property of a third person, the plaintiff could not adopt such intention of Gray without adopting the fraud. This is but holding that a principal cannot claim a positive benefit to himself from the fraudulent act of his agent. But suppose that Gray, by placing these fraudulent checks in plaintiff's funds during the examination, had escaped the discovery of his defalcations at that time, and had immediately afterwards taken the same fraudulent checks and indorsed plaintiff's name upon them, and negotiated them and embezzled the proceeds, and defendant company had paid them before discovering their fraudulent character; no one connected with plaintiff company, except Gray, having had any knowledge of the existence of any such checks. Would the fact that Gray had before negotiating them and embezzling their proceeds placed them secretly among plaintiff's funds to hide his own frauds render the plaintiff liable to the defendant for the amount of such fraudulent checks?"

The court in this case also quotes with approval the language of the Utah court in the case of First National Bank of Nephi v. Foote, 12 Utah, 157, 42 P. 205, which language is as follows:

"The case of Atlantic Cotton Mills v. Indian Orchard Mills, 147 Mass. 268, 17 N. E. 496, 9 Am. St. Rep. 698, was referred to and much relied on by appellants. The facts of that case clearly distinguish it from the case at bar. It announces the doctrine that an agent's knowledge of his own fraud is to be imputed to the principal in a transaction where the agent alone represents the principal. This is a distinction which seems to us less substantial than technical, and we cannot give it our assent. The rule of law which imputes the knowledge of an agent to his principal, according to most of the authorities, is based upon the presumption that the agent will communicate to his principal whatever he knows concerning the business he is transacting: and the exceptions to the rule, upon the contrary presumption, that the agent will not communicate to this principal his knowledge of his own independent frauds, committed in the course of transacting the principal's business, and that he will not communicate to his principal his knowledge in a transaction where he is interested on the opposite side. In a case where the presumption arises that an agent will not communicate his knowledge to his principal, or to another acting for the principal, it would seem to be unreasonable to hold the principal responsible for the knowledge of the agent solely because the agent in the particular transaction appeared himself for the principal. The presumption would naturally be, in such a case, that he would fail to act upon such knowledge as the principal would act, just as he would fail to impart his knowledge in a case where another appeared for the principal."

We, like the federal court, would hesitate to place an unqualified approval on all of the doctrines announced in the Atlantic Cotton Mills Case, and we believe that it is distinguished from the case at bar by the fact that the agent, Gray, who was the defrauding agent, was the sole and only agent of the corporation sought to be charged, whereas, in the case at bar, as we have previously said, other agents who acted for the defendant in the receipt of money were apparently designedly misled by the agent, Campbell. In fact, in the body of the opinion of the Atlantic Cotton Mills Case, the following language appears:

"Nobody, on the part of the plaintiff,

called Gray to any account, or knew that he was accounting, or that he was indebted to the plaintiff, or that these funds had come into the plaintiff's possession, or that they had come from Gray."

In the case at bar it will be observed that the Oklahoma City agents of the defendant association received an accounting from Campbell by each of the four different checks; that they knew he was accounting and that these other agents knew that the funds had not come into the plaintiff's possession and that they had come from Campbell. In the case of Thompson Houston Electric Co. v. Capitol Electric Co., 65 Fed. 341, in an opinion by Judge Taft, then circuit judge, the court said in considering the effect of the decision in the Atlantic Cotton Mills Case, supra:

"The corporation **parted with nothing** for the checks or money received by it. The transaction was one in which the agent was not securing anything from his principal. The benefit secured by the theft moved solely to the principal. There was no adversary relation between the agent and the principal at all. The agent was acting throughout for the benefit of his principal in an attempt to recoup **for it an existing loss,** and thereby to conceal his own **previous thefts."**

In the same decision the following rather terse statement concerning the rule of agency previously discussed in this case appears:

"The truth is that where an agent, though ostensibly acting in the business of the principal, is really committing a fraud for his own benefit, he is acting outside of the scope of his agency, and it would therefore be most unjust to charge the principal with knowledge of it."

In connection with the Atlantic Cotton Mills Case, it is interesting to observe the language of the same court, in the case of Craft v. South Boston Railway Co. (Mass.) 5 L. R. A. 641, in which recovery from the principal of money wrongfully borrowed by an agent to cover his own embezzlement was denied and the court in the opinion used the following language:

"No obligation on the part of the defendant ought to be implied in this case, because Reed was a defaulter and the money was used to cover up his defalcation by paying debts of the company which the money of the company, if he had not embezzled it, would have been used to pay. The only reasonable inference is that Reed's primary purpose in using the money in this way was to escape detection, and benefit himself. Whether it was a benefit to the company that he was able to obtain and use money for this purpose is necessarily uncertain. The money was not borrowed bona

fide for the use of the company. See Railroad Nat. Bank v. Lowell, 109 Mass. 214; Agawam Nat. Bank v. South Hadley, 128 Mass. 503.

"By the terms of the report there must be judgment for the defendant."

After a careful consideration of the rule of law announced in the decisions heretofore cited, we have concluded that in order for the defendant to retain the money it is necessary that it be an innocent holder for value. We have concluded that so far as the petition of the plaintiff is concerned, it is an innocent holder and the knowledge of the agent, Campbell, is not imputed to it. We have further concluded that whether or not it parted with value or suffered detriment is a matter of defense to be decided upon the further proceedings of the trial court. Judgment of the trial court in dismissing plaintiff's case will, therefore, be reversed, with directions to overrule the demurrer to plaintiff's petition and proceed in accordance with the views herein announced.

RILEY, C. J., CULLISON, V. C. J., and SWINDALL, ANDREWS, McNEILL, OSBORN, and WELCH. JJ., concur. BAYLESS, J., absent.