## GREAT AMERICAN INDEMNITY CO. v. FIRST NAT. BANK OF HOLDEN-VILLE, OKL.

### No. 1731.

Circuit Court of Appeals, Tenth Circuit.

Dec. 19, 1938.

Rehearing Denied Jan. 25, 1939.

J. D. DeBois and George C. Abernathy, both of Oklahoma City, Okl. (Edward Howell, of Oklahoma City. Okl., on the briefs), for appellant.

John Brett, of Oklahoma City, Okl. (Lloyd J. Mullen, of Oklahoma City, Okl., and Tom Anglin and Alfred Stevenson, both of Holdenville, Okl., on the brief), for appellee.

Before LEWIS, PHILLIPS, and WILLIAMS, Circuit Judges.

PHILLIPS, Circuit Judge.

On January 16, 1931, D. D. Mathis, as principal, and Great American Indemnity Company, as surety, executed a bond to the state of Oklahoma in the penal sum of $100,000, conditioned that Mathis as executor of the estate of Lillian D. Walker, deceased, should faithfully execute the duties of his trust according to law.

On December 15, 1936, C. C. Stanford, administrator with the will annexed, of the Walker estate, who had succeeded Mathis, obtained a judgment against Mathis and the Indemnity Company on the bond on account of defaults by Mathis as executor for $9,886.03, with interest thereon from January 31, 1936, at 6 per cent per annum, and for $9.25 costs.

On January 13, 1937, the Indemnity Company paid Stanford, as administrator, the sum of $10,466.98, and received from him a written assignment of such judgment. Thereafter, the Indemnity Company, claiming as subrogee and assignee of the Walker estate, brought this action against Mathis and the First National Bank of Holdenville, Oklahoma, hereinafter referred to as the bank, to recover on account of trust funds of the estate alleged to have been wrongfully transferred and converted by the bank and Mathis. The cause came on for trial before the court without a jury.

The complainant offered in evidence 20 cancelled checks, aggregating $13,977.78, of which the following check is typical:

"Holdenville, Okla. 1/3 1934 No.......
"The First National Bank 86–213
"Pay to the
   Order of ........Bank ........$26.92
......Twenty Six & 92/100......Dollars
For ...............................
                "D. D. Mathis, Exe
                "Lilly D. Walker Estate".

The complainant also offered in evidence 3 cancelled checks, aggregating $1,000, of which the following check is typical:

"Holdenville, Okla. 12/14 1931 No.......
"The First National Bank 86–213
"Pay to the
   Order of.....D. D. Mathis.....$100.00
......... One Hundred .........Dollars
For Loan
                "D. D. Mathis, Exe
                "Lilly D. Walker Estate".

Mathis was also guardian of Bessie Litka. He carried his accounts as executor and guardian in the bank.

Mathis, called as a witness for the complainant, testified that he was cashier of the bank from 1925 until March, 1935; that Dale Crutchfield drew checks on the bank without sufficient funds on deposit to meet such checks when presented; that these checks were paid when presented; that by various manipulations he concealed the fact that Crutchfield had insufficient funds on deposit to meet the checks, and kept the checks in his safety deposit box; that ultimately he charged the checks to his account as guardian of Litka and thereafter restored the Litka account by means of the checks above referred to drawn on his account as executor of the Walker estate; that the other employees and officers of the bank had no knowledge of such transactions; and that under a private arrangement with Crutchfield, acting as guardian and executor, respectively, he advanced the funds to Crutchfield as loans from Litka and the Walker estate.

He testified further that one Leech had a cotton account in the bank; that the bank advanced Leech money to purchase cotton and took tickets for the cotton as security; that the account became overdrawn $1200, and the president of the bank instructed him to close out the account; that instead of doing so, he made a private arrangement with Leech by which he loaned Leech $1200 of his guardianship funds, which was used to cover the overdraft in the cotton account; that later he restored the guardianship funds by a transfer from his account as executor.

He testified further that he owed the bank approximately $1100; that he loaned Crutchfield $1100 as executor of the Walker estate and took Crutchfield's note therefor; that he made a check payable to Crutchfield for the $1100; that Crutchfield endorsed the check to him and he used it to take up his note with the bank.

The bank interposed a demurrer to the evidence. The trial court found that Mathis in making the advances to Crutchfield and Leech acted in his capacity as guardian and executor and not as an officer of the bank, and entered its order sustaining the demurrer to the evidence.

Complainant undertook to appeal from that order. Thereafter, on October 11, 1938, the court entered an order dismissing the action and allowed an appeal therefrom

in open court, and the parties have stipulated that the second appeal may be heard upon the record on the first appeal, supplemented by the judgment dismissing the action.

The evidence established that Mathis, acting as guardian, first made loans to Crutchfield and Leech from the Litka funds; that thereafter Mathis, acting as executor, made loans to Crutchfield and Leech from the Walker estate to reimburse Litka; that the proceeds of such loans were used to pay the Crutchfield checks and pay Leech's obligation to the bank; that Mathis, acting as executor, made a loan to Crutchfield of the funds of the Walker estate; that Crutchfield then advanced the proceeds thereof as a loan to Mathis, and that Mathis used such proceeds to pay his obligation to the bank.

The bank had no actual knowledge of the loans made by Mathis as guardian and executor to Crutchfield and Leech, or the loan made by Crutchfield to Mathis. If these loans were proper loans made in good faith by Mathis acting within his authority as guardian and executor, respectively, imputation of knowledge thereof to the bank would not affect its rights in receiving the proceeds of such loans for deposit or in payment of obligations to the bank. On the other hand, if Mathis acting as guardian and executor, respectively, in making such loans acted in bad faith and without authority as guardian and executor, respectively, the question arises as to whether the knowledge of Mathis is imputed to the bank.

■ It is a well settled general rule that notice to, or knowledge of, an agent while acting within the scope of his authority and in reference to a matter over which his authority extends, is notice to, or knowledge of, his principal.

In the Restatement of the Law of Agency, § 272, the rule is stated:

"In accordance with and subject to the rules stated in §§ 273-282, the liability of a principal is affected by the knowledge of an agent concerning a matter as to which he acts within his power to bind the principal or upon which it is his duty to give the principal information."

■ Certain qualifications of the general rule are equally well settled. Mechem on Agency, 2d Ed., §§ 1803, 1813-1826. A principal is not chargeable with or bound by notice to, or knowledge of, an agent as to matters involved in a transaction in which the agent deals with the principal or another agent of the principal as, or on account of, an adverse party. The exception applies when the agent is engaged in prosecuting some fraudulent or illegal enterprise, the success of which would be impaired or defeated by the disclosure to his principal of the notice or knowledge sought to be imputed.

■ A qualification of the exception is recognized where the agent, although engaged in perpetrating an independent fraudulent act on his own account, is the sole representative of the principal and the principal, with knowledge of the facts, retains the fruits of the transaction.

In such a case the principal is impaled on the horns of a dilemma. If he disclaims the agent's act as unauthorized, he has no grounds to retain the fruits thereof; on the other hand, if he retains the fruits of the agent's act, after knowledge of the facts, he must in fairness be charged with the agent's knowledge. Maryland Casualty Co. v. Queenan, 10 Cir., 89 F.2d 155, 156, 157.

In Aetna Casualty & Surety Co. v. Local Bldg. & Loan Ass'n, 162 Okl. 141, 19 P.2d 612, 616, 617, 86 A.L.R. 526, the court said:

"In this connection it is the general rule of law that the knowledge of an agent is imputed to the principal. The reason for this rule, recognized by most courts, is that it is presumed the agent will communicate his information to the principal. This reason has been criticized by some eminent authorities who urge that the real reason is based upon the broader ground of policy and expediency to safeguard the affairs of business and society. Pomeroy on Equity Jurisprudence (4th Ed.) vol. 2, par. 676.

"Regardless of the reason for the rule, there is universally recognized exception; namely, that the knowledge of the agent will not be imputed to the principal when such knowledge concerns a transaction in which the agent is 'Engaged in the commission of an independent fraudulent act on his own account and the facts to be imputed relate to this fraudulent act.' 21 R.C.L. page 844.

"The reason for this exception recognized by the authorities which place the reason for the rule upon the basis of presumed communication is that where the agent is committing a fraud it would be

contrary to common sense to presume that he would communicate the facts to his principal. The reason for the exception, recognized by the authorities who place the rule upon the ground of expediency and policy, is that when engaged in the perpetration of a fraud, the agent is not really acting for his principal, but is really acting for himself entirely outside the scope of agency. * * * The plaintiff * * * states that there is a qualification to the exception, or exception to the exception, the gist of which is that where the agent, though engaged in perpetrating an independent fraudulent act on his own account, is the only representative of the principal, his knowledge is imputed to the principal, falling within the general rule imputing knowledge to the principal. * * * Campbell was not the only agent of the defendant in the transactions. * * * The checks mailed to Oklahoma City were received and placed in the process of clearance in Oklahoma City by other agents of the defendant company. * * * Therefore, it seems to us obvious that with the proper application of the rule the qualification mentioned above has no bearing on this case, for the reason that in the receipt of the money by the defendant company the agent Campbell was not the only agent of the defendant connected with the transactions. We therefore hold in this connection that the knowledge of the agent Campbell was not imputed to the defendant."

Here, there was no showing that in receiving the proceeds of the Crutchfield loan from the Walker estate for deposit to the credit of Litka, Mathis acted as the agent of the bank or the sole representative of the bank. Likewise, there was no showing that in receiving the proceeds of the loans from the Walker estate to Leech and Crutchfield in payment of the obligations of Leech and Mathis to the bank, Mathis acted as the agent or the sole representative of the bank. Mathis testified the loans were handled in a separate and distinct department of the bank respecting which he had no authority. The fair implication is that the bank received payment of the Mathis note through its loan department and in that transaction was not represented by Mathis.

The evidence adduced brings the case within the exception to the general rule and there was no proof bringing it within the qualification to the exception.

Accordingly, we conclude that in making the loans or advances to Crutchfield and Leech, Mathis acted in his capacity as executor of the Walker estate; that those transactions were wholly unrelated to his duties as cashier of the bank; that his knowledge of those transactions under the circumstances is not imputed to the bank, and did not affect the rights of the bank with respect to the proceeds of the loans received from Crutchfield, Leech, and Mathis.

The decree is, therefore, affirmed.