**UNITED STATES FIDELITY AND GUARANTY COMPANY, a corporation, Appellant,**

v.

**STATE OF OKLAHOMA ex rel. Carl B. SEBRING, State Bank Commissioner of Oklahoma, Appellee.**

No. 9201.

United States Court of Appeals Tenth Circuit.

Oct. 13, 1967.

Edgar Fenton, of Fenton, Fenton, Smith, Reneau & Moon, Oklahoma City, Okl., for appellant.

Dwight Tolle, Okemah, Okl. (G. T. Blankenship, Atty. Gen. of Oklahoma, and W. J. Monroe, First Asst. Atty. Gen., with him on the brief), for appellee.

Before LEWIS and SETH, Circuit Judges, and BRATTON, District Judge.

BRATTON, District Judge.

This is an appeal from a judgment for the plaintiff receiver for a dissolved state bank allowing recovery of $162,-609.86 against the defendant bonding company on two Bank Employee Dishonesty Blanket Bonds. Originally filed in state court, the suit was removed by defendant to federal district court upon the basis of diversity of citizenship and jurisdictional amount. A trial to the court was had, resulting in the judgment from which this appeal is taken.

On October 29, 1961, as a result of negotiations with M. W. Lee, the president of Farmers State Bank of Boley, Oklahoma, the bonding company issued a renewal bond to replace the bank's expiring employee fidelity bond. This was the last of a series of such bonds issued to the bank over a twenty year period. The amount of the renewal bond was $50,000.00. The second or excess blanket bond, negotiated at the same time as the renewal bond and as part of the same transaction, was issued on December 5, 1961, in the amount of one million dollars, less a deductible amount of $50,000.00. In December of 1961 the bonds were approved by the bank's board of directors, composed of Lee, his wife, her sister, and his brother-in-law.

The bank closed on March 6, 1962. The next day the state bank examiners began an examination of the bank's records and, within a few days, determined that losses had been sustained through embezzlement. A Notice of Loss was furnished defendant on March 27, 1962. Liquidation procedures were begun under the supervision of the District Court of Okfuskee County, Oklahoma. It was found that the bank had sustained losses of $162,609.86. The bank president admitted responsibility for the losses on June 20, 1963, and attributed them to his own fraudulent acts during several immediately preceding years. He had periodically taken bank money for use in his own business, covering his unauthorized withdrawals by using fictitious control accounts and his own business account into which he transferred the embezzled money to be later withdrawn, and by means of promissory notes signed by him in the names of nonexistent borrowers. He also issued certificates of deposit to bank customers of which no record was made in the bank's books, so that the money so deposited could be diverted to his own uses. Further, he had borrowed $10,000.00 from another bank for the purpose of showing greater assets in his own bank. He left the

borrowed funds there, depositing them in a savings account maintained there by his bank. He also left with the bank's president a draft for the amount of the loan, to be charged against the savings account in the event that the loan was not otherwise paid. This draft was charged against the account the day before his own bank closed. In spite of the fact that he had not actually deposited the borrowed funds in his own bank, Lee made an entry for the amount of the loan in one of his control accounts and subsequently withdrew $10,000.00 for his own use.

■ The bonding company defends first upon the basis of a clause in the bond applications signed by Lee as president, stating that to the knowledge of the bank all employees had always performed their duties honestly.[1]

This clause was in the application for the excess bond as well as the application for the original primary bond and is considered to be applicable to the renewal bond. Obviously, Lee knew of his own dishonest acts. While the evidence shows that the rest of the bank's board of directors had no knowledge of Lee's wrongful conduct and his fraud in procuring the bonds, the bonding company asserts that he was the sole representative of what was essentially a "one-man" bank, i. e., he was the bank's "alter ego", and his guilty knowledge became the bank's guilty knowledge. See Aetna Casualty & Surety Co. v. Local Building and Loan Ass'n, 162 Okl. 141, 19 P.2d 612, 86 A.L.R. 526 (1933). This argument is not convincing. The bank's board of directors met regularly, and board members took a fairly active part in bank affairs. The testimony given in the trial of this case indicates that board members examined the bank examiner's reports, checked on promissory notes and their security, and checked individual deposits and savings accounts. These examinations had failed to disclose Lee's fraud. The board considered and approved the acquisition of the two fidelity bonds in question, and such approval was duly recorded in the minutes of the board. The bonding company has failed to establish that Lee was the bank's sole representative. Maryland Casualty Co. v. Tulsa Industrial Loan and Investment Co., 83 F.2d 14, 105 A.L.R. 529 (10th Cir. 1936). See General American Life Insurance Co. v. Anderson, 46 F.Supp. 189 (W.D.Ky.1942).

■■ Of equal inapplicability is the bonding company's argument that the bank cannot seek to enforce a contract procured by the misrepresentations of its agent (sole or otherwise) without having imputed to it the agent's guilty knowledge, unless it has changed its position before learning the facts. An agent's knowledge of matters within the scope of his authority is knowledge of his principal, Knox v. First Security Bank of Utah, 206 F.2d 823 (10th Cir. 1953), for it is presumed that such knowledge will be disclosed to the principal. An exception exists when the transaction is one in which the agent is secretly acting adversely to the principal. Great American Indemnity Co. v. First National Bank of Holdenville, Okl., 100 F.2d 763 (10th Cir. 1938); Restatement (Second), Agency §§ 280, 282 (1958). If the agent is defrauding his principal, it is not realistic to presume that this very knowledge will be disclosed to the principal. The exception is subject to the qualification contended for by the bonding company in the present case, i. e., if the principal retains the fruits of the agent's acts after knowledge of the facts, it must be

---

1. The pertinent clause reads as follows: "The present officers and employees of the Insured, of whom a complete list at this time, with positions held, is attached, have all, to the best of the Insured's knowledge and belief, while in the service of the Insured always performed their respective duties honestly. There has never come to its notice or knowledge any information which in the judgment of the Insured indicates that any of the said officers and employees are dishonest. Such knowledge as any officer signing for the Insured may now have in respec to his own personal acts or conduct, un known to the Insured, is not imputable to the Insured bank."

charged with the agent's knowledge. Great American Indemnity Co. v. First National Bank of Holdenville, Okl., supra.

■ While the argument may be advanced successfully under other circumstances, see Maryland Casualty Co. v. Queenan, 89 F.2d 155 (10th Cir. 1937), it has no application to the facts of this case. Both bond applications signed by Lee as president of the bank contained a specific clause stating that knowledge by the signatory officer of his own personal acts or conduct and unknown to the bank would not be imputed to it. It should be noted that the clause makes no mention of any exception pertaining to sole representatives. See note 1 supra. This clause, without more, takes the case beyond the scope of the principles contended for by the company. When Lee signed the bond application, he alone knew of his embezzlement. Further, only he had engaged in the misappropriation of the funds for which the bank now seeks indemnification. In addition, the application was a form drafted by the bonding company. The company expressly contracted away the defense it now seeks to assert.

The company next urges that it should be excused from liability because, in deciding to issue the bonds, it relied upon two of the bank's published financial statements which had been verified by the board of directors. Under 6 O.S.A. § 94 (1941), such financial statements are required to be compiled and published semiannually. The statute further provides that such statements shall be the result of a thorough examination of the bank's records by the board of directors. The company contends that this statute implies a fiduciary duty to the general public, including potential sureties, and that the board, by relying upon Lee's management and by failing to adequately inform itself of the bank's true condition, should be held to have knowledge of the falsity of the statements.

■ Under 36 O.S.A. § 3609 (1958), recovery on any insurance policy is prevented if representations in an application are: (1) fraudulent; (2) material to acceptance of the risk by the insurer; or (3) if the insurer would not have issued the policy, would have reduced its amount, or would not have covered the hazard resulting in the loss, had the true facts been made known to it. The company argues that the above statutes, the uncontroverted testimony by Lee in the trial below that the published statements were false, and the board's failure to discover such falsity, excuse it from liability. Statutes requiring compilation and publication of a bank's financial statements are designed to protect depositors, stockholders, and creditors of a bank. Crews v. Garber, 188 Okl. 570, 111 P.2d 1080 (1941). It has been held that it is no defense to an action on an employee surety bond that the surety relied upon published reports for a bank's assets and liabilities. Lieberman v. First National Bank of Wilmington, 8 Del.Ch. 519, 45 A. 901, 48 L.R.A. 514 (1900). Accord, McMullen v. Winfield Building and Loan Ass'n, 64 Kan. 298, 67 P. 893, 56 L.R.A. 924 (1902). In construing the Arizona statute identical to 36 O.S.A. § 3609 supra, it has been held that some sort of personal knowledge on the part of the insured is required before the insurance company can avoid liability. Mutual Life Insurance Co. of New York v. Morairty, 178 F.2d 470 (9th Cir. 1949); American National Insurance Co. v. Caldwell, 70 Ariz. 78, 216 P.2d 413 (1950). The trial court found the uncontradicted facts to be that, prior to the bank's closing, its board of directors had no knowledge of fraudulent and dishonest acts by anyone connected with the bank and, prior to Lee's subsequent admission of guilt, no certain knowledge that he had committed the dishonest acts. The act of the board of directors was not a misrepresentation as to the company. Nor does the company fasten upon the board of directors the necessary knowledge that the published statements were either knowingly untrue or were made with such utter disregard of the facts as to

amount to a fraud. Maryland Casualty Co. v. Tulsa Industrial Loan and Investment Co., supra.

The bonding company's final contention is that the trial court's judgment is not supported by sufficient evidence. It particularly attacks certain amounts allowed to be recovered as a result of the testimony of Lee and as a result of the examination of the bank's records by the state bank examiner. The trial judge's findings of fact in an action tried without a jury will not be set aside unless clearly erroneous, and due regard will be given to the opportunity of the trial court to judge the credibility of witnesses. Findings of fact, if supported by substantial evidence and not clearly erroneous, will be accepted by the appellate court. Federal Security Insurance Co. v. Smith, 259 F.2d 294 (10th Cir. 1958); Federal Deposit Insurance Corp. v. Deaton, 105 F.2d 677 (10th Cir. 1939); Rule 52(a), Fed.Rules of Civ. Proc. 28 U.S.C.A. The amount of the losses for which the company must indemnify the bank is supported by substantial evidence, and the contention that it was not is without merit.

The judgment is affirmed.